**In re POSEIDON POOLS OF AMERICA, INC., Debtor.**

**Bankruptcy No. 191–10935.**

United States Bankruptcy Court, E.D. New York.

March 29, 1995.

---

Parker, Chapin, Flattau & Klimpl, New York City, for debtor.

Fischbein, Badillo, Wagner & Itzler, New York City, for Creditors' Committee.

Alan Nisselson, Chapter 7 Trustee, Brauner, Baron, Rosenzweig & Klein, New York City.

## DECISION ON APPLICATION FOR FINAL ALLOWANCE OF ATTORNEYS' COMPENSATION

MARVIN A. HOLLAND, Bankruptcy Judge.

### DECISION

This matter comes before this Court on the final application (hereinafter "Final Application") of Parker Chapin Flattau & Klimpl (hereinafter "Applicant"), counsel to the debtors, for allowance of compensation and reimbursement of expenses. For the reasons set forth herein, a final allowance is granted in an amount substantially less than that which was requested.

### BACKGROUND

The debtors, Poseidon Pools of America, Inc., S & V Pools, Inc., Poseidon Pools, U.S.A., Inc., Poseidon Manufacturing Corp., Poseidon Pools of Allentown, Inc., Poseidon Pools of Marlboro, Inc. and Poseidon Pools of Route 110, Inc. (hereinafter, the "Debtors") originally filed separate petitions for relief under Chapter 11 of the Bankruptcy Code on February 13, February 15, and March 6 of 1991, respectively. These cases were consolidated for procedural purposes only by order of this Court dated February 22, 1991. On September 15, 1992 it became apparent that reorganization was not feasible and these cases were converted to chapter 7.

By application dated February 19, 1992 (hereinafter, the "Interim Application"), Applicant sought an interim award of legal fees of $43,750.00 and reimbursement of expenses of $6,838.46 for services rendered pre-petition and $157,738.93 in legal fees and $23,676.98 [1] for reimbursement of expenses for

---

**1.** These are the amounts reflected in the Notice of Motion for the Interim Application. In the Interim Application itself, Applicant seeks fees of $155,807.68 and reimbursement of expenses of $16,497.52 stating "[t]hese amounts are less than the amounts listed in Applicant's notice of motion and reflect the application of this Court's guidelines to Applicant's time records." Although based on this statement and the amounts set forth in the Interim Application it appears that Applicant has voluntarily reduced the amounts it seeks for fees and reimbursement of expenses, such is not the case because in the Final Application, Applicant seeks $99,004.37 for

services rendered by the Applicant from the period of February 13, 1991 to November 30, 1991. By order dated April 10, 1992, this Court, without then fixing the fair and reasonable value of Applicant's services, permitted an advance "towards post-petition services and expenses" in the amount of $133,000.00 against fees and expenses to be awarded upon a final application. By order dated June 16, 1992, this Court authorized further payment of the sum of $50,588.46, representing the fees requested and expenses incurred for the pre-petition services rendered by the Applicant, from the $100,000.00 retainer that the Applicant received pre-petition. This payment was also an advance pending approval of a final fee application.

On October 2, 1992, the Applicant filed this Final Application seeking a total of $281,497.84 in fees and expenses representing (1) $99,004.37 [2] for fees and expenses previously sought in the Interim Application but not awarded nor permitted as an advance, (2) $27,684.00 [3] for fees and expenses claimed to have been inadvertently excluded from the Interim Application, and (3) $154,809.34 [4] in fees and expenses for the final period not otherwise covered.[5]

Hearings on the Final Application were held on October 14, 1992 [6] and October 28, 1992 [7]; decision was reserved.

fees and expenses previously unawarded and unadvanced and this amount is derived by adding the pre-petition fees and expenses to the amounts reflected in the Notice of Motion and then subtracting the $133,000.00 permitted as an advance pursuant to the Order of this Court dated April 10, 1992. *Thus, by seeking $99,004.37 in the Final Application for fees and expenses previously unawarded and unadvanced, Applicant is, in part, seeking compensation and reimbursement for certain items in its time records that the Applicant itself recognizes are not compensable or reimbursable.*

2. As noted in footnote 1 herein, this amount is derived by Applicant by adding the pre-petition fees and expenses to the amounts reflected in the Notice of Motion and then subtracting the $133,000.00 permitted as an advance pursuant to the Order of this Court dated April 10, 1992. However, Applicant fails to take into account that there was a second advance pursuant to the Order dated June 16, 1992 in the amount of $50,588.46. Thus, the amount of $99,004.37 as set forth in the Final Application is overstated by $50,588.46.

3. This amount represents $26,798.30 for fees and $885.83 for reimbursement of expenses.

4. This amount represents $144,279.55 for fees and $10,529.79 for reimbursement of expenses.

5. On October 16, 1992, Alan Nisselson, the chapter 7 trustee, filed an objection to the Final Application which did not address the reasonableness of Applicant's fee requests but rather went to the issue of payment and not to the issue of what amounts should be awarded. We note that this objection need not be addressed as part of this decision because we are concerned in this decision merely with the issue of allowance of compensation and reimbursement of expenses and not with the issue of payment of such.

6. After a brief discussion concerning the materiality of the Southern District of New York fee guidelines to the present matter, the October 14, 1992 hearing was adjourned to October 28, 1992 because the Final Application did not contain certain necessary documents.

7. At the October 28, 1992 hearing, the Applicant acknowledged that certain time entries in the Final Application pertaining to research and other time entries which, according to the Applicant were inadequately described were not compensable. Therefore, the Applicant stated that it would submit additional papers voluntarily withdrawing its request for compensation for such time entries. A review of the docket and the files on this case does not reveal that any such additional papers were filed by the Applicant after the October 28, 1992 hearing. However, recognizing that papers sometimes get misplaced or incorrectly filed, this Court contacted the Applicant to inquire as to whether any additional papers were in fact submitted by the Applicant after the October 28, 1992 hearing. In response, we received from the Applicant a letter from the Applicant to this Court dated November 5, 1992 (hereinafter, the "November 5 Letter"), which, amongst other things, voluntarily withdraws the Applicant's request for compensation as to certain time entries in the Final Application and further explains certain other time entries in the Final Application. Although, we have no record of the November 5 Letter being filed with this Court we will treat it as if it had been. Therefore, in accordance with Applicant's voluntary withdrawal of its request for compensation as to certain time entries as set forth in the November 5 Letter, we will reduce the compensation requested in the Final Application in the amount of $1,464.75 for time entries pertaining to the Final Application Period and in the amount of $470.00 for time entries inadvertently omitted from the Interim Application and made part of the Final Application. In addition, we have incorporated the supplemental explanations for certain time

On May 28, 1993, this Court, without then fixing the fair and reasonable value of Applicant's services, permitted a further advance, in the amount of $140,748.92 against fees and expenses to be awarded pursuant to this Court's decision regarding the Final Application.

By this final application, we are called upon to make a final determination concerning the request for fees and reimbursement of expenses in the amount of $414,497.71 representing (1) $50,588.46 for services rendered pre-petition, (2) $209,099.91 ($181,-415.91 of which was requested as part of the Interim Application and $27,684.00 of which was inadvertently omitted from such) for services rendered during the period covered by the Interim Application, and (3) $154,809.34 for services rendered during the period covered by the Final Application, against which a total of $324,337.38 has already been permitted as an advance, subject to final determination of this Final Application. Applicant still retains the remainder of the pre-petition retainer in the amount of $49,411.54.

## JURISDICTION

This Court has jurisdiction of this application as a core proceeding pursuant to 28 U.S.C. §§ 157(2)(A) and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York dated August 28, 1986.

## ANALYSIS

It is a curious fact that attorneys who during the course of a trial spring to a gladiatorial posture and strain to inundate an adversary with a surfeit of testimonial or documentary evidence and who later mire a court in a superabundance of repetitive proposed findings of fact and conclusions of law are strikingly parsimonious with evidence of that which is required to establish the elements of their claim of compensation for professional services rendered in a bankruptcy proceeding. Lawyers may never forget

that in all judicial proceedings there exists a burden of proof. Evidentiary facts properly placed before the court to demonstrate entitlement to each item of relief sought are no less essential in a hearing to fix fees than they would be in the most heavily contested of trials.

The starting point in any determination regarding fee applications is 11 U.S.C. § 330(a)[8] which provides in relevant part:

(a) After notice ... and a hearing ... the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... and by any paraprofessional persons employed by such ... attorney ... based on the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

Since 11 U.S.C. § 330(a) only authorizes this Court to award compensation and reimbursement for actual and necessary services and expenses, their existence must be established in the same manner as any other element essential to the granting of relief notwithstanding the absence or flaccidity of opposition. A bankruptcy court has an affirmative duty to examine the propriety of fees and expenses even where no objections are raised. *See In Matter of Ferkauf, Inc.,* 42 B.R. 852, 853 (Bankr.S.D.N.Y.1984), *aff'd,* 56 B.R. 774 (S.D.N.Y.1985) (a bankruptcy court is "duty bound thoroughly to review fee applications, *sua sponte,* in order to determine whether the compensation requested is reasonable"); *In re Copeland,* 154 B.R. 693, 697 (Bankr.W.D.Mich.1993) ("[t]he court has an obligation to examine the propriety of fees and expenses requested even if no objections

entries as contained in the November 5 Letter into our analysis of such time entries set forth herein.

8. 11 U.S.C. § 330(a) was amended by section 224(b) of the Bankruptcy Reform Act Of 1994

(hereinafter, the "Act"). However, pursuant to section 702 of the Act, the amendment to 11 U.S.C. § 330(a) is not applicable to cases such as this which were commenced prior to the date of the enactment of the Act.

are raised."); *accord, In re J.F. Wagner's Sons Co.*, 135 B.R. 264, 266 (Bankr.W.D.Ky. 1991); *In re Esar Ventures,* 62 B.R. 204, 205 (Bankr.D.Haw.1986). Thus, the fact that no objections to the reasonableness of the fees requested have been raised in this case, is of consequence only to the extent that we are required to undertake the unperformed obligations which Congress has imposed upon the trustee and upon the U.S. Trustee. Their failure to fulfill their statutory obligation does not excuse us from fulfilling ours.

■ The burden of proving that services were actual and necessary and that the compensation sought is reasonable is on the Applicant. *In re Beverly Mfg. Corp.,* 841 F.2d 365 (11th Cir.1988); *In re U.S. Golf Corp.,* 639 F.2d 1197, 1207 (5th Cir.1981); *In re Navis Realty, Inc.,* 126 B.R. 137, 145 (Bankr. E.D.N.Y.1991). "This burden is not to be taken lightly, as every dollar expended on professional fees results in a dollar less that is available for distribution to creditors." *In re Gillett Holdings,* 137 B.R. 462, 466 (Bankr. D.Colo.1992) (*quoting, In re Chicago Lutheran Hospital Ass'n,* 89 B.R. 719, 732 (Bankr. N.D.Ill.1988)); *see also In re Huhn,* 145 B.R. 872, 874 (W.D.Mich.1992) ("The bankruptcy court must make an independent review of the fee petition. The court has the responsibility for avoiding waste of estate assets and preventing overreaching by attorneys in their attempts to be paid attorneys' fee from the estate.").

In this regard, 11 U.S.C. § 330(a) is implemented by Fed.R.Bankr.P. 2016(a) which defines the requirements for applying for compensation for professional services and reimbursement of expenses:

(a) Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a *detailed* statement of (1) the services rendered and (2) the amounts requested ... [emphasis added].

Fed.R.Bankr.P. 2016(a).

To satisfy this burden, "[t]he extensive case law interpreting [11 U.S.C. § 330(a)] and Rule 2016(a) make it clear that a claimant must justify its charges with detailed, specific, item-by-item documentation ...". *In re Gold Seal Products Co., Inc.,* 128 B.R. 822, 827 (Bankr.N.D.Ala.1991) (*citing, Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874 (11th Cir.1990); *Port Royal Land & Timber Co. v. Berkowitz, Lefkovits, Isom & Kushner,* 924 F.2d 208 (11th Cir.1991); *In re Bicoastal Corp.,* 121 B.R. 653 (Bankr. M.D.Fla.1990); *In re Cano,* 122 B.R. 812 (Bankr.N.D.Ga.1991); *In re Landing, Inc.,* 122 B.R. 701 (Bankr.N.D.Ohio 1990); *In re Environmental Waste Control,* 122 B.R. 341 (Bankr.N.D.Ind.1990); *In re Robertson Companies, Inc.,* 123 B.R. 616 (Bankr.D.N.D. 1990); and *In re Hunt,* 124 B.R. 263 (Bankr. S.D.Ohio 1990)).

This Court has previously held that "[t]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *In re Navis Realty, Inc.,* 126 B.R. at 142 (*quoting, Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) (Burger, Chief Justice, concurring)); *see also In re Shades Of Beauty, Inc.,* 56 B.R. 946, 950 (Bankr.E.D.N.Y.1986) ("Detailed timesheets establish the 'actual' [component of 11 U.S.C. § 330(a) ]; while an accompanying explanation of the 'how' and 'why' establishes the 'necessary' [component of 11 U.S.C. § 330(a) ].")*; In re J.F. Wagner's Sons Co.,* 135 B.R. at 267 ("Professionals ... have the responsibility and burden of providing an adequate description of the services rendered and expenses incurred, in order for the Court to make a determination as to the reasonableness of the fees requested").

Thus, "a proper fee application must list 1) each activity separately; 2) the day on which it was performed; 3) the person who performed the work; 4) description of the work performed or subject matter of the work; and 5) time spent on the work." *In re J.F. Wagner's Sons Co.,* 135 B.R. at 267.

Moreover, "the application should explain the outcome of the aforementioned activities and justify their necessity." *In re Navis Realty, Inc.,* 126 B.R. at 142. Ideally, the fee application's time sheets should "permit

the Court as much as reasonably possible to identify the legal problems involved, the difficulty of the problems, how the problem was resolved and what results were achieved for the estate." *In re Navis Realty, Inc.*, 126 B.R. at 142 (*quoting, In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 361 (Bankr. E.D.N.Y.1982)).

▮▮▮ Where documentation of services is too vague or nonspecific to permit meaningful review, a court may not award compensation for such services.[9] *See, e.g., In re Gold Seal Products Co., Inc.*, 128 B.R. at 828 ("bankruptcy courts must weigh the proofs provided by the professional fee applicants to determine 1] if the application itself provides the detailed information required for meaningful review; 2] and, given adequate documentation, if the services charged were actual, necessary and reasonable and thus of benefit to the bankruptcy estate. If there is a failure of proof in either inquiry, the court cannot approve payment of the affected claim from resources of the bankruptcy estate."); *see also In re Alfred G. Mattera*, 128 B.R. 107, 120 (Bankr.E.D.Pa.1991) ("in several instances the descriptions of services performed in the Application are totally inadequate, as they fail to divulge even the general subject matter of letters, phone calls, or discussions with colleagues ... [t]he time sought for such poorly-described services must be disallowed"); *In re Great Sweats, Inc.*, 113 B.R. 240, 244 (Bankr.E.D.Va.1990) ("Where the application contains spotty de-

scriptions of the services performed, the applicant has not carried his burden of proof and the Court is precluded from accurately determining the reasonableness of the hours spent."); *In re S.T.N. Enterprises*, 70 B.R. 823 (Bankr.D.Vt.1987) (court denied compensation for services insufficiently described). In such instances, a fee applicant is in the same position as is any litigant with a burden of proof that it has failed to meet. Moreover, it matters not whether the failure arises out of inability or neglect.

▮▮▮ As the court in *In re J.F. Wagner's Sons Co.*, 135 B.R. at 267, stated:

[a] Court should not be required to indulge in guess work, nor undertake extensive labor to justify a fee for an attorney who has not done so independently. If an attorney fails to provide a statement as to the nature of his or her toil and the relation it bears to the matter at hand, compensation may not be allowed.

In conjunction with the above, we note the following principles regarding a fee applicant's burden of providing sufficient information to the court:

▮▮▮ First, with respect to telephone calls, the time entries must at a minimum describe the purpose and length thereof and the parties involved. A time sheet entry of " 'telephone call' or even 'telephone call with Mrs. X' is insufficient." *In re Navis Realty, Inc.*, 126 B.R. at 143; *In re Pettibone Corp.*,

---

9. We note that even in the non-bankruptcy context in cases where as here an applicant requesting an award of fees has the burden as to the reasonableness of such fees, vague and otherwise insufficient descriptions of services will result in a denial or reduction in the amount of fees requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (where the "documentation of hours is inadequate, the ... court may reduce the award accordingly."). *Cruz v. Local Union No. 3 of the IBEW*, 150 F.R.D. 29, 35 (E.D.N.Y.1993) ("While vague descriptions are not fatal to a fee application, courts in this Circuit have reduced fee awards due to the lack of specificity in time records [citations omitted] ... In light of the numerous entries which contain insufficient descriptions of the work done and the necessity for such work, the Court reduces the lodestar amount for all pretrial services by twenty-five percent [citations omitted]."); *United Slate Tile & Composition v. G & M Roofing*, 732 F.2d 495,

502 n. 2 (6th Cir.1984) (supporting documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended ..."); *In re Donovan*, 877 F.2d 982 (D.C.Cir.1989) ("We have examined all the documentation provided by [the] attorneys and find that a number of billing entries are not sufficiently documented ... The vague description does not allow the court to evaluate whether the time billed was spent on issues that have been found not within the contemplation of § 593(f) and this compels the court to exclude such hours"). *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1296, 1324 (E.D.N.Y.1985) ("vaguely described or insufficiently documented time" was not compensable). *In re Washington Pub. Power Supply Sys. Secs. Litig.*, 779 F.Supp. 1063, 1095 (D.Ariz. 1990) ("Inadequate documentation was perhaps the single major cause of the Court's modifications to the requested time and tasks.").

74 B.R. 293, 301 (Bankr.N.D.Ill.1987). In addition, a time sheet entry of "telephone call to Mrs. X re: accountants" would be inadequate as the "one or two word reference is insufficient to apprise the court of the nature and substance of the conversation in sufficient detail for the court to evaluate its necessity, or the value thereof." *In re Navis Realty, Inc.,* 126 B.R. at 145; *see also In re Pettibone Corp.,* 74 B.R. at 301 ("[t]he purpose and length of the conversations, ... must be clearly set out"). As the court in *In re Office Prods. of America,* 136 B.R. 964, 976 (Bankr.W.D.Tex.1992) noted:

> entries for phone calls are not compensable unless the purpose of the conversation, the length of the conversation, and the names of the persons involved in the conversation are set out ... [a]n entry such as '[v]arious calls with [Mr. X] and office regarding [Y]' fails to indicate the function, substance, necessity, or benefit of the call with sufficient particularity to permit the court to evaluate whether or not the service is compensable.

■ Similarly, with respect to interoffice conferences between attorneys of the applicant, "an entry of 'conference' or 'meeting', 'conference with X' or 'conversation with X' is insufficient [as] [t]he entry should at the very least note the nature and purpose of the various meetings and conferences as well as the parties involved." *In re Navis Realty, Inc.,* 126 B.R. at 141; *In re Pettibone Corp.,* 74 B.R. at 301. As the court in *In re Office Prods. of America,* 136 B.R. at 976–77 stated:

> entries indicating a conference—whether intraoffice or otherwise—must include sufficient information to permit the court to evaluate the necessity of the service provided, the reasonableness of the time spent on the service, and the reasonableness of the fee charged for the service—including the need for a conference ... [w]hile intraoffice conferences are not prohibited, they must be justified ... [e]ntries for intraoffice conferences, without any indication of why the conference was necessary or how it benefits the estate, are not compensable.

■ Moreover, even when a conference or meeting between attorneys is justified, "[a]s a general rule, no more than one attorney may charge the estate for intraoffice conferences, meetings ... unless an adequate explanation is given." *In re Adventist Living Ctrs., Inc.,* 137 B.R. 701, 716 (Bankr.N.D.Ill.1991); *accord, In re Office Prods. of America,* 136 B.R. at 977.

■ Finally, an applicant should not "lump" several services or tasks into one time sheet entry because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided. As the court in *In re Environmental Waste Control,* 122 B.R. at 347, n. 7 noted: "[i]t is not the court's job to decipher time entries and guess how much time each activity took ... [i]t is the responsibility of the applicant to make separate time entries for each activity." By "lumping" services, an applicant fails to meet its burden under 11 U.S.C. § 330(a) and Fed.R.Bankr.P. 2016(a). Accordingly, where "lumping" occurs, courts have denied compensation for the services lumped into a time sheet entry based on the impossibility of determining whether the time spent on the individual services was reasonable. *See In re Navis Realty, Inc.,* 126 B.R. at 144 ("Each type of service should be listed with the corresponding specific time allotment ... [lumping] makes it impossible for the Court to determine whether or not the time spent on a specific task was reasonable ... [t]herefore, services which have been lumped cannot be compensated."); *see also In re Copeland,* 154 B.R. at 702 ("Authority exists for disallowing in toto all services which have been 'lumped' together.") (*citing In re Horn & Hardart Baking Co.,* 30 B.R. 938, 944 (Bankr.E.D.Pa.1983)); *In re J.F. Wagner's Sons Co.,* 135 B.R. at 268–69 ("Services which have been lumped together into a single entry without a detailed narrative will not ordinarily be compensated."); *In re Office Prods. of America,* 136 B.R. at 976 ("[s]ervices which have been lumped together should not be compensated"); *In re Esar Ventures,* 62 B.R. at 205 ("where there is a block of services without a breakdown of the time for each service rendered, there will be no compensation.").

Clearly, an applicant seeking an award of fees and/or reimbursement of expenses must provide the court with sufficient detailed information regarding each individual service including the time spent for such service so as to enable the court to undertake a meaningful review of the fees and expenses requested.

Where this is done, "[i]t is now settled that the 'lodestar' method of fee calculation ... is the method to be used to determine a 'reasonable' attorney fee in all the federal courts, including the bankruptcy courts." *In re Cena's Fine Furniture,* 109 B.R. 575, 581 (E.D.N.Y.1990).

The lodestar method involves a determination of the proper amount of compensation by multiplying the reasonable number of hours appropriately expended by an applicant by an appropriate hourly rate for the services provided. Thus, two separate determinations are required: first, the reasonableness of the number of hours appropriately expended on the service provided, and second, the reasonableness of the hourly rate.

## OVERVIEW

Given the length of this decision, a brief outline of its contents is appropriate.

Parts I and II analyze the time entries in the Final Application which pertain to the period extending from December 1, 1991 to September 14, 1992 (hereinafter, the "Final Application Period") and the time entries in the Final Application which were omitted from the Interim Application to determine the number of compensable hours for such time entries. We note that the Final Application is roughly 250 pages long with the time sheets for the Final Application Period alone taking up some 75 pages. In addition, the time sheets which were omitted from the Interim Application total approximately 12 pages. Although the general practice of courts faced with applications of this size of the Final Application may be to analyze samples of the billing statements and extrapolate to the application as a whole, at least with respect to the time entries pertaining to the

Final Application Period and the time entries omitted from the Interim Application, we have chosen to fully analyze *each and every* time entries in order to avoid any possible prejudice to the Applicant.

This analysis reveals that the time entries are woefully deficient in providing that level of information necessary for a meaningful evaluation, without which this Court is unable to make the findings necessary to support a conclusion of reasonableness with regard to many of Applicant's billings. "Lumping," inadequate descriptions, and insufficient explanations preclude any. finding as to the reasonableness of the hours expended on many of the legal services for which compensation is sought.

In Part III of this decision, we set forth our holding as to the time entries contained in the Interim Application (hereinafter, the "Interim Period Time Entries").

In Part IV of this decision, we set forth our holding as to the reasonable billing rate that will be applied to the compensable hours to arrive at the appropriate award of compensation for the Applicant.

Finally, in Part V of this decision, we discuss disbursements for which reimbursement is sought.

## DISCUSSION

### PART I

*FEES REQUESTED IN THE FINAL APPLICATION FOR THE FINAL APPLICATION PERIOD*

Based on our analysis of the relevant law and the shortcomings in the time entries pertaining to the Final Application Period, we make the following adjustments to the number of hours for which compensation is requested for the Final Application Period.

I. *DISALLOWANCE #1—INADEQUATELY DESCRIBED MISCELLANEOUS TIME ENTRIES* [10]

Compensation for the following time entries cannot be authorized due to a

---

**10.** The time entries set forth and analyzed in subparts I through IX of Part I of this decision do

not include the time entries where legal services have been lumped into one time entry, except in

failure of proof; the vague and inadequate descriptions therein do not provide this Court with information sufficient to conduct an appropriate review of the services for which compensation is sought. It should be stressed that the disallowance of compensation for insufficiently descriptive entries is not a penalty for inadequately detailing the application. This Court has a duty to find that every entry for which compensation is authorized has been supported by a finding that the service rendered was necessary and proper. Failure to properly document and explain time entries is a failure of proof which prevents such findings. Accordingly, compensation for the following time entries and all other time entries which contain insufficient descriptions may not be approved:

[11] 12/2/91 PREPARE REVISIONS JC .50 97.50

*What document was revised and what did the revisions pertain to?*

12/3/91 PREPARE REVISIONS AFTER REVIEWING THE JC .50 97.50
 SETTLEMENTS OF THE AUTO LEASE CASES,
 THE GRANT THORNTON RETENTION APPLICA-
 TION AND MANUFACTURING LEASE

*What document was revised and what did the revisions pertain to?*

12/16/91 DISCLOSURE STATEMENT; VARIOUS PHONE AHS .75 71.25
 CALLS RE: TURNOVER PROCEEDING

*What, if anything, was done to the disclosure statement? Various phone calls—with whom?*

12/17/91 TO P. SARAGE RE: TURNOVER OF FUNDS FOR AHS .50 47.50
 RENTS

*What does "[t]o P. Sarage" mean?*

12/23/91 REVIEW LETTER, ORDER FROM ITZLER PHK .25 58.75

*What Order? What did letter relate to?*

1/23/92 PREPARE CLAIMS FOR DISCLOSURE IF 3.50 245.00

*What does this mean?*

1/24/92 PREPARE MATERIAL RE EFFORTS OF PCF & K JC .50 97.50
 FOR DISCLOSURE STATEMENT. REVIEW SAM-
 PLES.

*What material? What samples?*

1/27/92 REVISE INSERT TO DISCLOSURE STATEMENT JC .25 48.75

*What insert and what was the nature of the revision?*

the rare situation where the lumped time entry sets forth the time expended on each service therein or where otherwise noted. Where a service has been extracted from a lumped time entry and analyzed in sub-parts I through IX herein, it is denoted as such by an "*" at the beginning of the description where the time expended on the services therein can be determined, or by a "**" in the "HOURS" column where the time expended on a service cannot be determined. "Lumping" of services is discussed in part X of this decision. We will also use the same methodology in Parts II and III of this decision where appropriate.

11. Except where otherwise noted, in each instance throughout this decision that we have analyzed and listed certain of the time entries contained in the Final Application, we have set forth the date of the time entry, the description of the services therein, the attorney or paraprofessional who performed the services (denoted by the individual's initials), the time expended on such services and the fees requested for such services as was done in the application under review.

2/07/92 OBTAIN AND ORGANIZE DOCUMENTS IN CON- MDH 1.00 110.00
NECTION WITH THE D–I–P FINANCING RE-
QUESTS.

*Which documents? What legal service was provided?*

2/10/92 PREPARE LETTER—OBTAIN DOCUMENTS PUR- MDH 1.25 137.50
SUANT TO REQUESTS AND TRANSMITTAL OF
DOCUMENTS

*Letter to whom? Obtaining documents is not a legal service.*

3/9/92 PLAN AND RESPONSE TO ITZLER'S LETTER CG .50 157.50

*What was the nature of the letter and what does this entry mean?*

6/29/92 COVER LETTERS TO MALI & CO. AJR 1.00 95.00

*What legal service was performed? What was the subject matter of the cover letters?*

6/29/92 COLLATING OPERATING REPORTS. AJR 1.50 142.50

*What legal service was provided?*

6/29/92 REVISE TAX ASPECTS; TC SHERMAN AJT 2.00 540.00

*What was the nature and purpose of the revisions? What document did the revisions relate to? What was the subject matter of the telephone call?*

7/14/92 OPEN CLAIMS LIST—COMPLETE AJR 3.00 285.00

*What legal service was provided? This is merely a statement as opposed to a description of the legal services rendered.*

7/14/92 NOTICE OF SETTLEMENT MODIFYING AUTO- AJR 5.00 475.00
MATIC STAY

*What service was rendered? Was the Notice of Settlement drafted? Served? And what about the service provided, if any, took five (5) hours?*

7/21/92 FORWARD SETTLEMENT CHECK SS .25 40.00

*This is not a legal service.*

8/7/92 PREPARE LETTER—C.O.S/CERTIFICATE OF SER- NS 1.50 112.50
VICE

*Letter to whom and regarding what?*

8/10/92 PREPARED LETTER, FILING AND COPIES NS 3.30 247.50

*Letter to whom and regarding what? What was filed and copied?*

8/18/92 ENVELOPES/LETTER NS 1.00 75.00

*What legal service was performed?*

8/19/92 PREPARE ENVELOPES—MAILING NS 1.50 112.50

*What did the mailing pertain to?*

II. *DISALLOWANCE # 2—INADE-QUATELY DESCRIBED TELE-PHONE CALLS AND CONFER-ENCES*

██ Compensation cannot be authorized for the following time entries for a failure of proof in that they fail to provide one or more of the following: (i) who was called, (ii) who attended a meeting, and/or (iii) the subject matter of a call or conference:

| Date | Description | Init. | Hrs. | Amount |
|---|---|---|---|---|
| 2/26/92 | MEETING BLUM (MEZZANINE), TASSONE | JA | 3.00 | 840.00 |
| 2/27/92 | POSEIDON—DIP CONFERENCE WITH JIM AL-TERBAUM | WMP | .40 | 94.00 |
| 3/2/92 | * MEETING 3/3 AT RON ITZLER OFFICE—CREDI-TORS COMMITTEE (3.0); ... CONFERENCES CLIENT 3/5 (2.0) | JA | 5.0 | 1,400.00 |
| 3/12/92 | IOC WITH J. ALTERBAUM; TELECONFERENCE WITH G. TASSONE | CG | .75 | 236.25 |
| 3/13/92 | IOC'S WITH J. ALTERBAUM; TELECONFER-ENCES WITH CLIENT | CG | 1.50 | 472.50 |
| 3/13/92 | POSEIDON—BANKRUPTCY—REVISE OPINION; CONFERENCE WITH RUBIN; MEET WITH LEW-ITTES | WMP | 2.30 | 540.50 |
| 4/13/92 | T/C TO LAWYER FOR PERSONAL INJURY PLAIN-TIFF OF POSEIDON | AHS | .25 | 23.75 |
| 6/25/92 | TELEPHONE CALLS TO FIND AMOUNT OF OPEN CLAIMS | AJR | 2.00 | 190.00 |
| 6/26/92 | TELEPHONE CALLS TO FIND AMOUNT OF OPEN CLAIMS | AJR | 2.00 | 190.00 |
| 6/29/92 | TELEPHONE CALLS TO FIND AMOUNT OF OPEN CLAIMS | AJR | 1.00 | 95.00 |
| 7/6/92 | TELEPHONE CALLS TO FIND AMOUNT OF OPEN CLAIMS | AJR | 1.00 | 95.00 |
| 7/14/92 | LETTER TO CREDITOR, MEETINGS RE PLAN, DISCLOSURE STATEMENT | PHK | .40 | 94.00 |

---

III. *DISALLOWANCE # 3—FILING AND RETRIEVING DOCUMENTS*

██ Compensation for the following time entries cannot be allowed because nowhere in the Final Application is there any showing of the necessity for these services. For example, while there may be times when personal delivery or retrieval of documents by an attorney or paralegal, there are other times when a messenger, overnight delivery, facsimile, or U.S. mail would be sufficient. Unless the least expensive mode was used, the burden is on an applicant to adequately

explain why a more expensive means was utilized;[12] where this is not done, the court is precluded from assuming that the services for which compensation was requested was necessary and appropriate. In particular, with respect to retrieving documents such as conformed orders from the court, the burden is on the Applicant to show why it would not have been appropriate to provide a self-addressed stamped envelope with the original submission of the proposed order. The necessity for personal retrieval of a conformed copy of an order from the court by an attorney or paralegal cannot be presumed; it must be established. If not established, it is not compensable. The same holds true with respect to filing documents. *See In re Environmental Waste Control*, 122 B.R. at 341 ("Either the United States mail or a messenger service would have been less expensive than having someone whose billing rate is $75.00 per hour [drive to the court to file papers]. Not having any explanation as to why it was necessary that these services be performed by an attorney/paralegal, the court finds that they were unnecessary and disallows them in their entirety.").

 Our holding with respect to delivery or retrieval of documents should not be misconstrued as being contrary to the holding of the Third Circuit Court of Appeals in *In re Busy Beaver Building*, 19 F.3d 833 (3rd Cir.1994), where that court, in reversing the bankruptcy court and the district court, held[13] clerical services such as filing motions to be compensable under 11 U.S.C. § 330, albeit possibly at a reduced rate of compensation. We are not holding delivery or retrieval of court documents to be "per se" noncompensable; nor are we holding such services compensable. We merely hold that a showing of why mail was not appropriate is prerequisite to any reimbursement for personal delivery.

Accordingly, for these reasons, compensation for the following time entries is denied.

| | | | | | |
|---|---|---|---|---|---|
| 12/31/91 | TRAVEL TO EDNY TO FILE OPERATING REPORTS | IF | | 2.00 | 140.00 |
| 1/2/92 | TRAVEL TO EDNY TO OBTAIN CONFORMED COPY AND INFO. | IF | | 2.00 | 140.00 |

12. As this Court stated in *In re Navis Realty, Inc.*, 126 B.R. at 145.

There are times when papers must not only be filed promptly but should be filed by someone who possesses not only knowledge of bankruptcy law, but of the case as well, such as one of the attorneys of record. An example of this is the filing of the original petition where, in the event that unforeseen problems arise at the time of filing they can be cured by the person who filed such that the filing, and the projections occasioned thereby, can be timely triggered. At other times, and under other circumstances, travel to court for the filing of papers is an unnecessary and unwarranted overutilization of legal talent, the expense for which should not be borne by the estate. Normal routine filing of papers can be done by mail, if necessary by overnight delivery, or by messenger. The burden of establishing the circumstances justifying the travel of one whose billing rate is $90.00 per hour for the delivery of papers must be done in the Application or such services will not be compensated.

13. Although it is clear that the Court of Appeals held that clerical services are compensable under 11 U.S.C. § 330, it is unclear whether the issue of compensability of clerical services was the issue properly before the court. In the decision rendered by the bankruptcy court on the Debtor's attorneys' motion for reconsideration, the court noted that "[b]oth Debtor's attorneys and the United States Trustee acknowledge that work performed by a paralegal which is clerical in nature is not compensable because it is included in overhead and taken into account when the firm's hourly rates are determined ... Debtor's counsel argues that the paralegal services at issue required independent judgment and decisionmaking and thus are separately compensable from the estate." *In re Busy Beaver Building Centers, Inc.*, 133 B.R. 753 (Bankr.W.D.Pa.1991), *rev'd* 19 F.3d 833 (1994). Thus, although it is not totally clear it appears from the bankruptcy court's statement that the parties on appeal had conceded that purely clerical services which did not require independent judgment and decisionmaking were not compensable. If this is so, and if the dispute between the parties in the lower courts concerned whether or not the clerical services for which fees were requested involved independent judgment and decisionmaking (as opposed to the issue of whether *all* clerical services were compensable) it would appear that the holding of The Third Circuit may have been somewhat beyond that which necessary to its ultimate holding.

| | | | | |
|---|---|---|---|---|
| 1/17/92 | TO BANKRUPTCY CT., BROOKLYN; FILE NOTICE; GET COPY RUSH—SHERMAN | JHF | 2.00 | 100.00 |
| 1/27/92 | TRAVEL TO EDNY TO OBTAIN CONFORMED COPY OF BAR ORDER | IF | 1.75 | 122.50 |
| 1/30/92 | TRAVEL TO EDNY TO FILE OPERATING REPORT | IF | 1.50 | 105.00 |
| 2/12/92 | TRAVEL TO EDNY TO FILE CERTIFICATE OF SERVICE | IF | 1.50 | 105.00 |
| 2/19/92 | TRAVEL TO EDNY TO FILE FEE APP. OF PCF & K AND ACCOUNTANTS | IF | 1.50 | 105.00 |
| 2/25/92 | TRAVEL TO EDNY TO FILE CERTIFICATES OF SERVICE | IF | 2.00 | 140.00 |
| 2/27/92 | TRAVEL TO EDNY TO FILE FEE APPLICATION FOR GRANT THORNTON | IF | 2.00 | 140.00 |
| 2/28/92 | PREPARE OPERATING REPORTS AND TRAVEL TO EDNY TO FILE | IF | 2.00 | 140.00 |
| 3/12/92 | TRAVEL TO EDNY TO OBTAIN CONFORMED COPIES | IF | 1.50 | 105.00 |
| 3/17/92 | TRAVEL TO EDNY TO FILE ORDER GRANTING FEE APPLICATION | IF | 1.50 | 105.00 |
| 3/31/92 | TO EDNY | AC | 1.50 | 112.50 |
| 3/31/92 | FILED PAPERS RE OPERATING STATE. | AC | .50 | 37.50 |
| 4/3/92 | TRAVEL TIME RE: FILING OF PAPERS | AC | 1.75 | 131.25 |
| 4/3/92 | FILED PAPERS RE: ORDER FOR INTERIM ALLOWANCE | AC | .50 | 37.50 |
| 4/15/92 | TRAVEL TO EDNY TO FILE ORDER AUTHORIZING PAYMENT | IF | 2.00 | 140.00 |
| 4/23/92 | EDNY BANKRUPTCY COURT—FILE BRIEFS | JHF | 2.00 | 100.00 |
| 4/30/92 | TRAVEL TO EDNY TO FILE OPERATING REPORTS | IF | 2.00 | 140.00 |
| 5/6/92 | TRAVEL TO EDNY TO OBTAIN ORDERS | IF | 1.25 | 87.50 |
| 5/28/92 | TRAVEL TO EDNY TO FILE STIP. AND ORDER ASSUMING/REJECTING LEASE | IF | 1.50 | 105.00 |
| 6/1/92 | TRAVEL TO EDNY TO FILE OPERATING REPORT | IF | 1.25 | 87.50 |
| 6/12/92 | TRAVEL TO EDNY TO FILE NOTICE OF SETTLEMENT | IF | 1.25 | 87.50 |
| 6/22/92 | TRAVEL TO EDNY TO FILE AMENDED PLAN & NOTICE OF SETTLEMENT | IF | 2.00 | 140.00 |
| 6/29/92 | E.D.N.Y. TO FILE OPERATING REPORTS. | AJR | 2.00 | 190.00 |
| 7/7/92 | TO BANKRUPTCY COURT BKLYN | NS | 2.00 | 150.00 |

| Date | Description | Init | Hours | Amount |
|---|---|---|---|---|
| 7/17/92 | TRAVEL TO EDNY TO FILE ORDER | IF | 1.50 | 105.00 |
| 7/30/92 | TRAVEL TO EDNY TO FILE OPERATING REPORTS. | IF | 2.00 | 140.00 |
| 8/4/92 | TO BANKRUPTCY COURT AND MAILINGS | NS | 2.30 | 172.50 |
| 8/13/92 | TRAVEL TO EDNY TO FILE NOTICE OF WITH-DRAWAL OF PROOF OF CLAIM | IF | 1.50 | 105.00 |

## IV. DISALLOWANCE # 4—RESEARCH

■ The time entries set forth below pertain to research, most of which relate to research regarding a conflict of interest issue. In the November 5 Letter, the Applicant voluntarily withdrew its request for compensation with respect to the time entries in the Final Application regarding research in connection with the conflict of interest issue.[14] However, the Applicant overlooked two of such time entries and we will deny compensation for them in accordance with the reasons set forth in the November 5 Letter.

With respect to the other time entries set forth herein, they too pertain to research. However, this Court has not been apprised of what the research involved or the purpose of such research. *See, e.g., In re Pettibone Corp.,* 74 B.R. at 302 (to be compensable "[t]he nature and purpose of the legal research should be noted. In addition, the entry should indicate what matter the material sought will be used in."). The inadequate descriptions regarding these time entries prevent us from determining whether they provided any benefit to the estate. Moreover, the supplemental explanation provided in the November 5 Letter[15] does not remedy the inadequate descriptions. Accordingly, these time entries fail for lack of proof and cannot serve as the basis for any award because we simply cannot determine whether the hours expended on the research are reasonable and whether such research was necessary.

| Date | Description | Init | Hours | Amount |
|---|---|---|---|---|
| 1/27/92 | CONFLICT OF INTEREST | JS | 4.75 | 451.25 |
| 1/27/92 | RESEARCH CONFLICT OF INTEREST | JS | .75 | 71.25 |
| 5/12/92 | RESEARCH COST OF LIVING INCREASE | RD | 1.75 | 113.75 |
| 5/12/92 | RESEARCH COLA CLAUSE FOR STARR | KF | .50 | 42.50 |

14. The time entries for which the Applicant withdrew its request for compensation in the November 5 Letter are the following:

| Date | Description | Init | Hours | Amount |
|---|---|---|---|---|
| 1/22/92 | RESEARCH CONFLICT OF INTEREST | JS | 3.50 | 332.50 |
| 1/23/92 | RESEARCH CONFLICT OF INTEREST | JS | 2.75 | 261.25 |
| 1/24/92 | RESEARCH CONFLICT OF INTEREST | JS | 5.00 | 475.00 |
| 1/28/92 | RESEARCH CONFLICT OF INTEREST | JS | 1.00 | 95.00 |

15. The November 5 Letter states with respect to the final time entry set forth in this section: "[the time entry] refers to research for Michael Starr, an associate in the applicant's labor department, with respect to cost of living adjustments ("COLA") involving agreements with debtors' employees."

V. *DISALLOWANCE #5—TIME EN-TRIES BILLED TWICE*

▮ Compensation for the second time entry in the following groups of time entries is denied as an exact duplication of the first time entry therein. It appears the second time entry in each pair listed below is a result of an error in posting the attorney time records to the Final Application.

| | | | | |
|---|---|---|---|---|
| 12/9/91 | PREPARE 10–K, DISCUSS BANK WITH P. KALBAN. | NB | .50 | 70.00 |
| 12/9/91 | PREPARE 10–K, DISCUSS BANK WITH P. KALBAN. | NB | .50 | 70.00 |
| 7/15/92 | LENGTH T/C W/ATTORNEY FOR PL PLAINTIFF RE POTENTIAL CLAIM; VARIOUS T/C'S W/CLIENT RE PROJECTIONS AND VIABILITY; REDLINE COPY OF 2ND AMENDED PLAN TO SEND OVER TO CREDITOR'S COMMITTEE; LONG T/C W/CREDITOR'S COMMITTEE RE PLAN AND LIQUIDATOR VESTING CLIENT | AHS | 2.40 | 228.00 |
| 7/15/92 | LENGTH T/C W/ATTORNEY FOR PL PLAINTIFF RE POTENTIAL CLAIM; VARIOUS T/C'S W/CLIENT RE PROJECTIONS AND VIABILITY; REDLINE COPY OF 2ND AMENDED PLAN TO SEND OVER TO CREDITOR'S COMMITTEE; LONG T/C W/CREDITOR'S COMMITTEE RE PLAN AND LIQUIDATOR VESTING CLIENT | AHS | 2.40 | 228.00 |

---

VI. *DISALLOWANCE #6—SERVICES IN CONNECTION WITH THE DISCLOSURE STATEMENT* [16]

▮ Our analysis of the services pertaining to the drafting of the disclosure statement reveals that, given the descriptions provided in the time entries, certain of such services must be deemed duplicative, and therefore, unnecessary and not compensable. For example, Applicant requests fees for the

---

**16.** The Final Application provides a "Summary of Services" performed by Applicant during the period covering the final fee application period. Included therein are services performed with respect to the (i) Third Financing Agreement, (ii) Plan of Reorganization, (iii) Disclosure Statement, (iv) Dispute with the Resolution Trust Company, (v) Fee Applications, etc. Ideally, the Final Application should have provided sufficient information to enable this Court to analyze each of the services performed in connection with each of the *specific* activities listed in the "Summary of Services." Had such information been provided, this Court could have conducted a lodestar analysis to determine the reasonableness of the hours expended on each of the specific activities set forth in the "Summary of Services." However, except *as* to certain activities, Applicant has failed to meet its burden of providing such information. For example, most or all of the services pertaining to the "Third Financing Agreement", have been impermissibly "lumped."

Thus, with respect to these services, this Court is unable to determine the amount of time that Applicant expended on the "Third Financing Agreement", and whether such time was reasonable. Accordingly, we are unable to separately analyze most of the Final Application's services in accordance with the specific activities listed under the "Summary of Services." Thus, with respect to the "Third Financing Agreement", the services in connection therewith are not separately analyzed but rather, are accounted for as part of the discussion concerning "lumping". However, with respect to the services pertaining to certain of the activities that have been performed during the final fee application period, i.e. services relating to the disclosure statement, interim fee application, and amendment of schedules, we have been provided with sufficient information to analyze some of the services pertaining to these activities under separate heading.

following services which all relate to the drafting of that part of the disclosure state- ment concerning "Confirmation Procedures":

| | | | | |
|---|---|---|---|---|
| 12/17/91 | DISCLOSURE STATEMENT—CONFIRMATION PROCEDURES | AHS | 1.50 | 142.50 |
| 12/18/91 | DRAFT DISCLOSE STATEMENT CONFIRMATION PROCEDURES. | AHS | 1.50 | 142.50 |
| 1/13/92 | DRAFT CONDITIONS OF CONFIRMATION OF THE PLAN OF REORGANIZATION FOR THE DISCLOSURE STATEMENT COMPLIANCE STATEMENTS WITH THE CODE. | AHS | 2.50 | 237.50 |

As this example illustrates, we must conclude that Applicant seeks compensation from the estate for multiple renditions of the same service on separate occasions. Stated differently, the service performed in the time entry dated 1/13/92 appears identical and consequently duplicative of the service performed in the time entry dated 12/18/92. Accordingly, compensation for the latter time entry is denied. Moreover, assuming that the time entry dated 12/17/91 is missing the word "Draft" and that the time entry should read "Disclosure Statement—*Draft* Confir- mation Procedures", the second time entry dated 12/18/91 is a mere duplication of the first.[17] Accordingly, with respect to the services set forth above compensation is denied for the time entries dated 12/18/91 and 1/13/92 and awarded for the time entry dated 12/17/91.

Further examples of multiple appearances on time sheets of identical services are illustrated in the following lists. For the reasons set forth above, compensation for the second service therein is denied.

(i) Third Party Financing

| | | | | |
|---|---|---|---|---|
| 1/22/92 | * DRAFT DISCLOSURE STATEMENT OF THIRD PARTY FINANCING (1 HR) ... | AHS | 1.00 | 95.00 |
| 1/23/92 | * DRAFT PORTION OF 3RD PARTY FUNDING (1 HR) ... | AHS | 1.00 | 95.00 |

(ii) Pending Litigation and Lawsuits

| | | | | |
|---|---|---|---|---|
| 1/24/92 | DRAFT DISCLOSURE STATEMENT SECTION ON PENDING LITIGATION AND CLAIMS; REVIEW LATEST DRAFT. | AHS | 1.50 | 142.50 |
| 1/27/92 | * DRAFT PORTION OF STATEMENT RE: PREFERENCE CLAIMS; PENDING LAWSUITS AND OTHER CAUSES OF ACTION (1.5 HR) ... | AHS | 1.50 | 142.50 |

17. Even if we were incorrect in this assumption, we note that the time entry dated 12/17/91 is not compensable because of the inadequate description of the service performed therein.

 In addition to the above, throughout the Final Application, Applicant bills for numerous revisions to documents. While under certain circumstances a revision to a document is compensable, the burden is on the Applicant to inform this Court as to the nature of the revisions, the purpose and necessity of the revisions, and where appropriate, the particular section or part of a document which the revision pertains to. Moreover, we note that given the numerous times throughout the Final Application that Applicant requests fees for revising various documents, Applicant fails to negate the obvious possibility that such a plethora of revisions was necessitated by a level of competency less than that reflected by the Applicant's billing rates. Accordingly, compensation for the following list of services is denied as this Court is not informed as to: (i) the nature of the revisions, (ii) what section of the disclosure statement was revised, and (iii) the purpose and necessity of the revisions.

| | | | | |
|---|---|---|---|---|
| 1/28/92 | REVISE DISCLOSURE STATEMENT; PREPARE ORGANIZATION FOR DOCUMENT | AHS | 1.00 | 95.00 |
| 5/19/92 | REVISE DISCLOSURE STATEMENT | PHK | * * | |
| 5/20/92 | REVISE DISCLOSURE STATEMENT | PHK | * * | |
| 5/20/92 [18] | REVISE DISCLOSURE STATEMENT | AHS | * * | |
| 5/22/92 | REVISE DISCLOSURE STATEMENT | AHS | * * | |
| 6/1/92 | REVISE DISCLOSURE STATEMENT | PHK | * * | |
| 6/3/92 | REVISE DISCLOSURE STATEMENT | PHK | * * | |
| 6/18/92 | REVISE DISCLOSURE STATEMENT AND PROOFREAD CHANGES | AHS | 1.00 | 95.00 |
| 6/23/92 | ... ASSIST P. KALBAN IN REVISING AND REDRAFTING DISCLOSURE STATEMENT ... | AHS | * * | |
| 6/23/92 | ASSIST P. KALBAN IN REVISING AND REDRAFTING DISCLOSURE STATEMENT ...[19] | AHS | * * | |
| 6/26/92 | REVISE AND REDRAFT DISCLOSURE STMNT [20] | AHS | * * | |

---

 Further, this Court has previously held that "[f]ees are not allowable for simply reading the work product of another lawyer as a matter of interest. Only if such

**18.** We note that on this date two different attorneys billed for the same service of "REVISE DISCLOSURE STATEMENT."

**19.** We note that this same service was billed two times by "AHS" on 6/23/92. See the previous time entry listed herein.

**20.** As set forth in footnote 10 herein, the services for which the time expended thereon is denoted by a "**" are services extracted from lumped time entries and therefore, we are unable to determine the time expended on such services. Although we list such services herein because they pertain to the disclosure statement, reductions in the fees requested for such services are accounted for in the part of this decision where we discuss the problem of "lumping". Accordingly, at this stage of our decision we will only address compensation for the time entries dated 1/28/92 and 6/18/92.

review is required to form some kind of response or to perform a particular task in the case will document review be compensable." *In re Navis Realty, Inc.*, 126 B.R. at 141. This same principle applies when an attorney reviews his own work product. Throughout the Final Application, Applicant bills for reviewing various documents without informing this Court as to the purpose or necessity thereof. Where such information is not provided, compensation is not available. With respect to the following time entries, Applicant has failed in meeting this burden:

| Date | Description | | | |
|---|---|---|---|---|
| 1/21/92 | * REVIEW DISCLOSURE STATEMENT (1 HR) | AHS | 1.00 | 95.00 |
| 1/23/91 | * REVIEW DISCLOSURE STATEMENT (.7 HR) | AHS | .70 | 66.50 |
| 5/18/92 | REVIEW AND REDRAFT DISCLOSURE STATEMENT | AHS | 2.50 | 237.50 |
| 5/21/92 | REVIEW DISCLOSURE STMT.; ADD INTRODUCTORY STMTS [21]. | AHS | 1.80 | 171.00 |
| 5/22/92 | REVIEW DISCLOSURE STATEMENT | AHS | .60 | 57.00 |
| 6/5/92 | REVIEW DISCLOSURE STATEMENT | AHS | * | * |

▬▬▬ Finally, we note some other problems that exist with respect to the fees requested for the services in connection with the disclosure statement.

First, compensation for the following time entries is denied:

| Date | Description | | | |
|---|---|---|---|---|
| 12/11/91 | DRAFT DISCLOSURE STATEMENT; REVIEW AND REVISE DOCUMENT. | AHS | 2.50 | 237.50 |
| 1/27/92 | DISCLOSURE STATEMENT (.5 HR) | AHS | .50 | 47.50 |

Compensation for the entry dated 12/11/91 is denied because, unlike all of the other services relating to drafting of the disclosure statement, we are not informed as to which part of the disclosure statement was drafted and as to the review and revise portion of the time entry, these services are denied for the reasons stated above. Moreover, if we were to award compensation for this time entry and thereby accept the description "DRAFT DISCLOSURE STATEMENT", it would necessarily follow that all of the other services pertaining to drafting the disclosure statement would be duplicative and not compensable. Compensation for the service contained in the time entry dated 1/27/92 is denied because we simply do not know what legal service was performed.

▬▬▬ Second, compensation for the following two time entries is reduced:

| Date | Description | | | |
|---|---|---|---|---|
| 5/15/92 | DRAFT DISCLOSURE STATEMENT AS REQUIRED BY SECTION 1125; DRAFT SECTION OF ALTERNATIVES TO CONFIRMA- | AHS | 9.50 | 902.50 |

21. With respect to the service described as "ADD INTRODUCTORY STMTS", we note that this is not compensable as Applicant previously billed 1.3 hours for "DRAFT INTRODUCTORY PROVISIONS" on 1/23/92.

TION OF THE PLAN; DRAFT SECTION OF SIGNIFICANT EVENTS OF REORGANIZATION; REVIEW DOCKET SHEET AND FEE APPLICATIONS FOR SIGNIFICANT EVENTS OF REORGANIZATION; DRAFT SECTION RELATING TO CLAIMS AND BAR DATE; DRAFT SECTION OF PROCEDURAL ASPECTS OF REORGANIZATION.

| 5/16/92 | DRAFT DISCLOSURE STATEMENT; DRAFT SECTIONS WHICH APPLY TO RISKS AND CONSEQUENCES OF THE PLAN; DRAFT SECTION ON ALTERNATIVES TO CHAPTER 11 PLAN. | AHS | 4.00 | 380.00 |

In addition to the problem of "lumping" as to these time entries, we note that on 1/14/92, Applicant billed for the following service:

| DRAFT DISCLOSURE STATEMENT—ALTERNATIVES TO CHAPTER 11 REORGANIZATION. | AHS | 1.25 | 118.75 |

Accordingly, the services described as "DRAFT SECTION OF ALTERNATIVES TO CONFIRMATION OF THE PLAN" and "DRAFT SECTION ON ALTERNATIVES TO CHAPTER 11 PLAN" in the time entries set forth above dated 5/15/92 and 5/16/92 are not compensable for the reasons previously mentioned with respect to duplicative services. For the same reasons, compensation cannot be authorized for the services described as "DRAFT DISCLOSURE STATEMENT AS REQUIRED BY SECTION 1125" and "DRAFT DISCLOSURE STATEMENT". Thus, we will reduce the amount of hours claimed for the time entries dated 5/15/92 and 5/16/92 by fifty percent (50%).

Third, there are numerous services pertaining to the disclosure statement that are contained in "lumped" time entries which have not been discussed herein. Since "lumping" of services is discussed below, we merely note at this point that compensation for such services is accounted for in the discussion concerning "lumping."

■ We note that the Clerk's Docket of this case does not show the filing of a Disclosure Statement. We also take judicial notice of the fact that during the conduct of this case, several other documents claimed to have been filed by credible attorneys do not appear on the Clerk's Docket. We further note that the Debtor's First Plan of Reorganization was filed on October 15, 1991; that according to the Final Application, the Creditor's Committee wanted to seek a conversion of this case from a Chapter 11 reorganization to a Chapter 7 liquidation; that during this time an amended Plan of Reorganization was negotiated; that in June of 1992 it was determined that the Amended Plan of Reorganization was not feasible; and that on September 15, 1992 the case was converted from Chapter 11 to Chapter 7. Ordinarily this series of events would impose upon the Applicant the additional burden of demonstrating the appropriateness of services rendered in the preparation, review, and amendment of both plan and disclosure statement, together with a discussion of when the Applicant knew or should have known that further efforts in these endeavors would be fruitless. However, since such discussion would apply mainly to entries we have been compelled to other-

wise disallow, the absence of such discussion may now be overlooked.

## VII. *DISALLOWANCE # 7—SELECTED SERVICES IN CONNECTION WITH THE INTERIM APPLICATION*

■ Our analysis of the time entries in the Final Application which pertain to the Interim Application reveals that certain of such services are not compensable because we again have the problem of duplicative services or double billing. On 1/14/92, Applicant bills two (2) hours for "PREPARE FEE APPLICATION AND EXHIBITS." Thereafter, Applicant bills 21.25 [22] hours for the following time entries which are all related to preparation of the fee application or the exhibits thereto:

| Date | Description | Init. | Hours | Amount |
|---|---|---|---|---|
| 1/30/92 | PREP. OF FEE APP. EXHIBITS, EXCLUDING ALL PRE–PETITION FEES AND DISBMTS AND IN COMPLIANCE WITH SOUTHERN · DISTRICT GUIDELINES; MTG. W/J. CARLSON RE SAME. | LR | 3.00 | 225.00 |
| 1/31/92 | PREPARE REVISIONS TO APPLICATION EXHIBITS. | LR | 2.50 | 187.50 |
| 2/05/92 | PREP. OF FEE APP. EXHIBITS FOR PRE–PETITION AND PAST PETITION WORK; PREPARE ACTUAL AMOUNTS FOR J. CARLSON FOR NOTICE OF MOTION. | LR | 2.00 | 150.00 |
| 2/05/92 | PREPARATION OF BILLING STATEMENT PURSUANT TO SDNY GUIDELINES. | MZ | 2.50 | 150.00 |
| 2/10/92 | PREP OF EXHIBITS FOR FEE APPLICATION, DISCUSSIONS WITH J. CARLSON, PREP OF REVISIONS. | LR | 4.25 | 318.75 |
| 2/10/92 | PREPARATION OF FEE APPLICATION. | MZ | 2.00 | 120.00 |
| 2/11/92 | PREPARATION OF EXHIBITS FOR FEE APPLICATION. | LR | 2.00 | 150.00 |
| 2/28/92 | PREPARE REVISIONS TO EXHIBITS FOR FEE APPLICATION; DISCUSSIONS WITH J. CARLSON RE: SAME. | LR | 3.00 | 225.00 |

---

Based on our analysis set forth above regarding duplicative services pertaining to the disclosure statement, we would be justified in denying compensation for all of the time entries subsequent to the 1/14/92 time entry on the basis that given the information provided and resolving ambiguities against Applicant, such time entries are duplicative of the 1/14/92 time entry and are therefore, not compensable. A further problem with respect to certain of these time entries (1/30/92 and 2/5/92) concerns the references to the "SOUTHERN DISTRICT GUIDELINES" or the "SDNY GUIDELINES". While we question [and did question at the October 14, 1992 hearing on the Final Application] the relevance of the Southern District of New York guidelines to a case in the *Eastern* District of New York, it is apparent that the application did not even conform to the

**22.** We note that in addition, Applicant bills for services related to the preparation of the Interim Application in the Interim Application.

Southern District of New York guidelines. Thus, we are unable to award compensation for any time expended by Applicant in "attempting" to prepare the Interim Application in accordance with or to conform it to such guidelines.

 Although we have great difficulty in authorizing compensation for the time entries set forth above which are subsequent to the time entry dated 1/14/92, we recognize that in a case like this where the fee application is substantial, the preparation of the application and the exhibits must necessarily require more than two (2) hours. Thus, we will authorize compensation for the hours expended in the time entries dated 1/14/92, 1/30/92, 1/31/92 and the first time entry dated 2/05/92 but not for the remaining time entries set forth above.

In addition to the problem of duplicative services, compensation for the following time entry pertaining to the interim fee application is denied for the reasons that follow:

| | | | | |
|---|---|---|---|---|
| 2/19/92 | ARRANGE FOR MR. LEWITTES TO SIGN THE FEE APPLICATION. SERVED PCF & K FEE APPLICATION, GRANT THORNTON FEE APPLICATION, FEE APPLIC. OF REMAINING TWO ACCOUNTING FIRMS, MOTION FOR RETENTION OF GRANT THORNTON NUNC PRO TUNC. FILED COPIES OF EACH DOCUMENT. | JC | 4.50 | 877.50 |

 As to this time entry, the first service set forth therein, i.e. "ARRANGE FOR MR. LEWITTES TO SIGN THE FEE APPLICATION" is not a compensable legal service. In addition, service of fee applications by an attorney who bills at the rate of $195.00 per hour is not only an unreasonable charge to the bankruptcy estate because such service is clerical in nature and can be performed by a paralegal or better yet, by a secretary, but given the failure of proof as to the necessity of service by an attorney, such service must be deemed unnecessary and therefore, not compensable. The same is true with respect to filing copies of the documents. Thus, compensation for this time entry cannot be granted.

 It is important at this part of this decision to address the issue of clerical services which we briefly alluded to in our discussion above regarding filing and retrieving documents to and from the court. In this decision we have denied a total of approximately $1,500.00 from the fees requested in the Final Application for services which are clerical. As set forth above, the Third Circuit Court of Appeals recently held that clerical services may be compensable under 11 U.S.C. § 330(a), albeit possibly at a reduced rate of compensation. *In re Busy Beaver Building,* 19 F.3d 833. In that case, the court held that based on the "plain meaning" of 11 U.S.C. § 330(a) the type of service performed by a paralegal or attorney affects the rate of compensation "not compensability vel non." *Id.* at 849. The court held that "the bankruptcy court should review fee applications not for whether each particular service undertaken by a paralegal is clerical or paraprofessional by nature, but for whether non-bankruptcy attorneys typically charge and collect from their clients fees for that particular service when performed by a member of that profession, and the rates charged and collected therefor." *Id.* This is because under the holding of *Busy Beaver Building,* so long as a court finds that a service was actual and necessary it *must* award some measure of compensation for such service if it finds that non-bankruptcy attorneys' in the relevant legal market typically charge from their clients for such services.

 Although our holding would appear to be in conflict with the decision in *Busy Beaver Building* to the extent that it does not approve compensation for such clerical services, such conflict is more apparent

than real. Even though the Third Circuit Court of Appeals refused to deny compensation for clerical services and even were we to believe, which we don't, that the Second Circuit Court of Appeals, would follow *Busy Beaver Building* in this regard, Applicant has not met its burden which exists independent of *Busy Beaver Building* of showing by the Applicant that the majority of firms in this district regularly (a) charge clients for clerical services at the rates charged by the Applicant, and (b) disclose to their clients that they are being charged for clerical services at professional or paraprofessional rates. Moreover, this Court is not able to take judicial notice that the practice of charging professional or paraprofessional rates for clerical services is common and acceptable in the legal "market" because we have no reason to think or believe that such practice exists. Finally, even if clerical services are compensable, in instances where such services are performed by an attorney or paralegal, an applicant has the burden of providing the court with information such that a court can determine whether it was necessary for the clerical service to have been performed by an attorney or paralegal as opposed to being performed by a paralegal or secretary, respectively. Where this burden is not met a court cannot conclude that the clerical service was "necessary" and therefore compensation for such service is not warranted. Thus whether or not we follow the holding of *Busy Beaver Building*, compensation for clerical services cannot be awarded based on a failure of proof by the Applicant.[23]

## VIII. *DISALLOWANCE # 8—SERVICES IN CONNECTION WITH APPLICANT'S AMENDING OF THE SCHEDULES OF ASSETS AND LIABILITIES*

▮ The following are some of the time entries relating to the Applicant's amending of schedules of assets and liabilities in this case:

| 6/09/92 | AMEND SCHEDULES OF ASSETS AND LIABILITIES ... | AHS | * * | |
| 6/09/92 | DRAFT NEW SCHEDULES OF LIABILITIES W/NEW NUMBERS AS PROVIDED BY CLIENT. | AHS | 3.50 | 332.50 |
| 6/10/92 | AMEND SCHEDULES OF ASSETS AND LIABILITIES ... | AHS | * * | |

---

**23.** We note in passing that we have a problem with the *Busy Beaver Building* decision insofar as it transforms the word "may" as it appears in 11 U.S.C. § 330(a) to "shall" or "must". As set forth above, 11 U.S.C. § 330(a) provides that after notice and a hearing "the court *may* award ... [emphasis added]" reasonable compensation. Thus, under the literal interpretation of 11 U.S.C. § 330(a), even where a court finds that a particular service is actual and necessary it has discretion in determining to award compensation for such service. To hold otherwise would be to read and interpret the word "may" in 11 U.S.C. § 330(a) as "shall" or "must." Although the court in *Busy Beaver Building* relied on the plain meaning of 11 U.S.C. § 330(a), its holding transforms the word "may" in 11 U.S.C. § 330(a) to "shall". Under *Busy Beaver Building*, so long as a court finds that a service is actual and necessary and one that non-bankruptcy attorneys' in the relevant legal market charges and collects from its non-bankruptcy clients, the court must award some measure of compensation for such service. This holding is clearly contrary to the plain meaning of 11 U.S.C. § 330(a). We interpret 11 U.S.C. § 330(a) as granting to the court the discretion to award reasonable compensation even where it finds that services are actual and necessary. To hold otherwise would not only be against the plain meaning of 11 U.S.C. § 330(a) but would eliminate a court's discretion in determining whether to award fees in favor of the practices that occur in the non-bankruptcy fee context where the concerns between client and attorney are not necessarily the same as between this court and the bankruptcy estate. Accordingly, this Court believes that 11 U.S.C. § 330(a) grants the court the discretion to deny compensation for certain actual and necessary services even where such services are charged and collected in the non-bankruptcy context. Moreover, this Court believes that a proper exercise of such discretion would be denying compensation for clerical services which should constitute a part of a law firm's overhead.

| Date | Description | | Hours | Amount |
|------|-------------|---|-------|--------|
| 6/10/92 | DRAFT AND REVISE SCHEDULES OF AS-SETS AND LIABILITIES; DRAFT AFFIDA-VITS OF CREDITORS WHO HAVE BEEN DE-LETED BY AMENDED SCHEDULES FOR EACH DEBTOR | AHS | 5.50 | 522.50 |
| 6/11/92 | DRAFT AND REVISE SCHEDULES OF AS-SETS AND LIABILITIES; DRAFT AFFIDA-VITS OF CREDITORS WHO HAVE BEEN DE-LETED BY AMENDED SCHEDULES FOR EACH DEBTOR | AHS | 2.50 | 237.50 |
| 6/12/92 | REVISE SCHEDULES OF ASSETS AND LIA-BILITIES ... | AHS | * * | |

---

Again, as occurred with respect to the services in connection with the disclosure statement and the interim fee application, as this list of services illustrates, the only conclusion which we can draw is that Applicant has not shown that it is not attempting to charge the estate on separate occasions for the same service. Every time entry listed above seeks fees for drafting and/or revising amendments to the schedules of assets and liabilities. We recognize that in a case like this, the process of amending schedules may take more than one day and in fact, may spread over several days. However, given the information that Applicant has provided, we have no way of determining that there is no unnecessary duplication. Accordingly, we are unable to authorize compensation for the 3.5 hours expended on 6/09/92 set forth above. With respect to the services extracted from the lumped time entries, the issue of compensation therefore discussed below under "lumping." Suffice it is to say that compensation for these undetailed services would have been denied at this stage of the decision even had such services been properly listed separately.

 As to the remaining "non-lumped" time entries dated 6/10/92 and 6/11/92, the descriptions of the services therein are identical. With respect to the services therein denoted as "DRAFT AND REVISE SCHEDULES OF ASSETS AND LIABILITIES", compensation for these services is denied for the reasons stated above. As to the services denoted "DRAFT AFFIDA-VITS OF CREDITORS WHO HAVE BEEN DELETED BY AMENDED SCHEDULES FOR EACH DEBTOR", since we are unclear as to what these services constitute, we simply cannot determine their necessity or reasonableness. In addition, although the services encompassed by these entries were allegedly performed on different dates and that the times claimed for such services vary, we note that an additional ground for denying compensation as to the time entry dated 6/11/92 is set forth in our discussion regarding "TIME ENTRIES BILLED TWICE" (see sub-part V—DISALLOWANCE # 5).

IX. *DISALLOWANCE # 9—MISCELLANEOUS DEDUCTIONS*

Compensation for certain of the miscellaneous time entries set forth herein is disallowed or reduced for the reasons which follow such entries.

(1)

| Date | Description | | Hours | Amount |
|------|-------------|---|-------|--------|
| 1/22/92 | * ... MTG W/AUGEN, MORGAN & SHERMAN RE: FINANCIALS, PREFERENCES, LIQUIDATION VALUE (2.5); ... | PHK | 2.50 | 587.50 |
| 1/22/92 | TRAVEL TO GRANT THORNTON FOR MEETING | AHS | .50 | 47.50 |

| 1/22/92 | ATTEND MEETING AT GRANT THORNTON RE: FINANCIALS PREPARED BY GRANT THORNTON. | AHS | 1.50 | 142.50 |
|---|---|---|---|---|

---

■ Compensation for the second and third time entries set forth herein cannot be authorized because, as previously noted, "no more than one attorney may charge the estate for intraoffice conferences, meetings ... unless an adequate explanation is given." *In re Adventist Living Ctrs., Inc.*, 137 B.R. at 716; *In re Office Prods. of America*, 136 B.R. at 977. As to these time entries, both "AHS" and "PHK" billed the estate for their attendance at the meeting at "GRANT THORNTON". Thus, because no explanation is provided as to the necessity of having both attorneys attend the meeting, compensation for "AHS's" attendance at the meeting is disallowed.

For the same reasons, as to the following time entries, compensation for the service extracted from the lumped time entry dated 1/15/92 and the second time entry herein cannot be authorized as in this instance, *three* attorneys' billed the estate for the same conference call.

| 1/15/92 | CALL W/GREENMAN & LEWITTES TO ITZLER | PHK | * * | |
|---|---|---|---|---|
| 1/15/92 | CONVERSATION WITH R. ITZLER; CONFERENCE WITH J. ALTERBAUM AND G. TASSONE [25] | CG | 75 [24] | 236.25 |
| 1/15/92 | CONF. CALL R. ITZLER, C. GREENMAN, P. KALBAN RE MOTION FOR CH. 11 TRUSTEE. | JOL | .75 | 273.75 |

---

Similarly, compensation for the service extracted from the second lumped time below dated 1/27/92 cannot be authorized.

| 1/27/92 | CONF. J. ALTERBAUM, C. GREENMAN AND A. SHERMAN AND CONF. CALL B. AUGEN RE DIFFERENTIAL IN PROJECTIONS ... | JOL | * * | |
|---|---|---|---|---|
| 1/27/92 | * ... T/C W/J. ALTERBAUM; C. GREENMAN AND J. LEWITTES TO B. AUGEN RE PROJECTIONS FOR COMPANY (.5 HR) ... | AHS | .5 | 47.50 |

---

(2)

Except as to the first time entry set forth below, compensation for the following non-lumped time entries dated 1/27/92 and 2/11/92 and the services extracted from lumped time entries dated 1/27/92 (the third time entry dated 1/27/92) and 2/7/92 cannot be authorized for the reasons that follow such entries.

24. We assume (and hope) this means .75 of an hour and not 75 hours.

25. The further explanation provided for this time entry in the November 5 Letter does not remedy the reasons for denying compensation.

| 1/27/92 | MAILING NOTICE OF BAR DATE. | IF | 2.50 | 175.00 |
|---|---|---|---|---|
| 1/27/92 | SENT OUT BAR DATE NOTICE, PREPARE CERTIFICATE OF SERVICE, PREPARE MAILING OF BAR NOTICE. | AHS | 3.00 | 285.00 |
| 1/27/92 | * REVIEW BAR DATE NOTICE AND PREPARE TO SEND OUT TO CREDITORS (1.75 HR) ... | AHS | 1.75 | 166.25 |
| 2/11/92 | DRAFT CERTIFICATE OF SERVICE FOR BAR ORDER NOTICE AND COMPILE EXHIBITS—SEND OUT LETTERS TO CLAIMANTS AND ATTORNEYS RE BAR ORDER. | AHS | 1.30 | 123.50 |
| 2/07/92 | * SEND OUT ADDITIONAL BAR NOTICES (.75) ... | AHS | .75 | 71.25 |

With respect to the non-lumped time entry dated 1/27/92 (the second time entry set forth above) and the service dated 2/07/92, it is unreasonable for Applicant to charge the bankruptcy estate at the rate of $95.00 per hour for services which are clerical in nature and which could be performed by a paralegal or secretary. In addition, the services denoted "SENT OUT BAR DATE NOTICE" and "PREPARE MAILING OF BAR NOTICE", within the time entry dated 1/27/92, are duplicative of the first time entry set forth above. For the same reasons, compensation for the service extracted from the lumped time entry dated 1/27/92 and the time entry dated 2/11/92 cannot be authorized.

(3)

For the reasons articulated above regarding revising and reviewing of documents, compensation for the time entries set forth below following the first time entry therein cannot be authorized.

| 4/2/92 | DRAFT MOTION TO REJECT EXECUTION, CONTRACT TO REJECT LEASE FOR TELEPHONE SYSTEM. | AHS | 1.80 | 171.00 |
|---|---|---|---|---|
| 4/2/92 | REVISE MOTION TO REJECT LEASE. | AHS | .30 | 28.50 |
| 4/7/92 | REVIEW MOTION AND ORDER TO REJECT LEASE. | AHS | .30 | 28.50 |
| 4/7/92 | ... REVISE MOTION TO REJECT LEASE ... | PHK | * * | |
| 4/8/92 | REVISE AND FINALIZE MOTION TO REJECT AN EXECUTION CONTRACT FOR TELEPHONE EQUIPMENT. | AHS | .50 | 47.50 |

Similarly, compensation cannot be authorized for the following time entries as we again are not informed as to the purpose or necessity of the document review or what task or activity the document review related to.

| 3/20/92 | REVIEW D.I.P. LOAN DOCUMENTS AND PRIOR MORTGAGES ON TWO PENNSYLVANIA PROPERTIES. | MMB | 1.25 | 175.00 |
|---|---|---|---|---|
| 3/23/92 | REVIEW OF CLOSING BINDER RE: LEASE WITH CITY AND MASTAN. | DRL | 1.50 | 427.50 |

(4)

For the reasons articulated above regarding revising of documents, compensation for the time entry set forth below cannot be authorized.

| 2/14/92 | REVISE MOTION FOR RETENTION OF GRANT THORNTON. REVISE FEE APPLIC. AND SUBMIT TO MR. KALBAN. SUBMIT GUIDELINES TO MR. KALBAN. | JC | 2.00 | 390.00 |
|---|---|---|---|---|

 As to this time entry, we first note that submitting documents to Mr. KALBAN is not a legal service and moreover, even if it were, compensation for such service at the hourly rate of $195.00 would be excessive.[26] As to the revision of the Grant Thornton retention motion, Applicant previously billed approximately four (4) hours for drafting such motion on 2/11/92. With respect to the revision of the motion as well as the revision of the fee application, compensation for such services is denied for the reasons previously discussed regarding Applicant's burden of proof as to revisions of documents.

## X. DEDUCTION # 10—"LUMPING"

 As noted above, "lumping" of services into one time entry is universally disapproved by bankruptcy courts because it prevents a court from determining the necessity of each service and whether the time expended on individual items was reasonable. As the court in In re Wildman, 72 B.R. 700, 709 (Bankr.N.D.Ill.1987) noted:

[Lumping is a] practice universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

In this case, there is an exorbitant amount of "lumping" in the Final Application.

Courts faced with lumped time entries have either (1) denied the compensation requested for such time entries, see, e.g., In re Navis Realty, Inc., or (2) made a global adjustment for all of the lumped time entries reducing compensation for such entries by a certain percentage, see, e.g., In re Adventist Living Ctrs., Inc., 137 B.R. at 706 (the court reduced by fifty percent (50%) the amount of fees requested for lumped time entries), solely on the basis of lumping.

Not only are we unable to authorize compensation for many of the lumped time entries due to failure to separately specify time spent on each separate item, many of the services described in the lumped time entries are also not compensable either because they are inadequately described or because they are duplicative of services for which compensation is not warranted. The problems addressed above with respect to non-lumped

---

26. Furthermore, we would like to know why a document as perfunctory as an application to retain a professional prepared by one billing at the hourly rate of $195.00 needs review by someone more senior, in view of the quality of review performed by the offices of the Applicant as manifested in the document now under review.

time entries also exist in many of the lumped time entries.

Thus, a discussion of inadequately described and duplicative services within the lumped entries will precede our discussion of their compensable hours.

(A) *INADEQUATELY DESCRIBED TIME ENTRIES WITHIN THE LUMPED TIME ENTRIES*

(i) *Miscellaneous*

█ The first type of inadequately described services within the lumped time entries could be referred to as descriptions which are "per se" inadequate. These would consist of telephone calls where either the person called or the subject matter is not described and conferences where the subject matter is not described. The following services extracted from the lumped time entries are examples:

12/3/91 TELEPHONE CALL SILVERBERG; ... MEET WITH ALTERBAUM;

12/4/91 ... REVIEW FINANCIALS.

12/9/91 ... CALLS TASSONE, ALTERBAUM.

12/10/91 TELEPHONE CALL WITH BRENNER ... TELEPHONE CALL SENZER RE: ORDERS; TELECON W/LOSOSKI RE: APPLICATIONS.

12/12/91 CALLS SENZER; PREP. OF DOCUMENTS FOR COURT.

12/13/91 CALLS KORNSTEIN, LOSOSKI, KLAIPS, SHERMAN

12/16/91 ... PREPARATION OF STIPULATION; REVIEW TERM SHEET, LETTER AND CALL TO KORNSTEIN ...

12/17/91 CALL, MEET WITH AND FAX TO BOLTAX RE: GMAC; CALL LETTER TO BOLTAX.

12/18/91 ... CALLS ALTERBAUM, TASSONE ...

12/20/91 ... FAX FROM KLAIPS ...

12/30/91 CALLS KLAIPS, ALTERBAUM; MEET W/LEWITTES ... CALLS DUBIEL

1/7/92 ... ARRANGE CONFERENCE CALL ... PREPARE STIPULATION; FAX SAME TO KORNSTEIN.

1/9/92 ... CALL MELMAN ... CALL ALBANESE.

1/10/92 ... CALL LOSOSKI

1/14/92 REVIEW DOCUMENT, LETTER FROM ALBANESE; TELECON W/KLAIPS, ALBANESE, LOSOSKI; CONFERENCE CALL W/ALBANESE, TASSONE, BLUM; ... REVISE DOCUMENTS; PREPARE FOR COURT.

1/15/92 ... CALL W/GREENMAN & LEWITTES TO ITZLER.

---

(ii) *Research*

█ The second type of inadequate descriptions within lumped time entries con-

cerns services pertaining to research. As set forth above, we denied compensation for cer-

tain "non-lumped" time entries concerning research where this Court has not been apprised of the precise questions researched, the complexity of the issues researched, or of the purpose of such research.[27] For the same reasons, with respect to the lumped time entries, the following services set forth therein are not compensable:

12/2/91 ... RESEARCH RE: LEASE ...

12/16/91 ... RESEARCH RE: EXCLUSIVITY MOTION

3/16/92 ... RESEARCH RE: PRIOR AGREEMENTS ...

5/7/92 ... RESEARCH RE: TAX LIENS ...

5/08/92 ... RESEARCH RE: TAX CLAIMS; ...

5/11/92 ... RESEARCH RE PLANS.

6/24/92 ... RESEARCH RE: CANCELLATION OF DEBT INCOME, SEC. 108, NOMINAL OR TOKEN SHARES.

6/28/92 ... RESEARCH RE: TAX ASPECTS OF CH. 11 REORGANIZATION; ...

---

(iii) *Telephone Calls and Conferences: One word descriptions*

■ The third type of inadequately described services within the lumped time entries concern telephone calls or conferences, the subject matter of which are inadequately described with only one word.

As noted above, this Court has previously held that a time sheet entry of "telephone call to Mrs. X re: accountants" is inadequate as the "one or two word reference is insufficient to apprise the court of the nature and substance of the conversation in sufficient detail for the court to evaluate its necessity, or the value thereof." *In re Navis Realty, Inc.*, 126 B.R. at 145; *see also In re Office Prods. of America*, 136 B.R. at 976.

The overwhelming majority of the services within the lumped time entries are telephone calls or conferences the subject matter of which is described by merely a single word. The following services which appear in the lumped time entries and which we have categorized according to the subject matter related thereto are examples:

(a) *"PREFERENCES"*

12/16/91 CALL BRYERMAN RE: PREFERENCES

1/6/92 CALL FROM BRYERMAN RE: PREFERENCES.

---

(b) *"FINANCING", "FUNDING", "MEZZANINE FUNDING" AND "BLUM FINANCING"*

(i) *"FINANCING"*

12/5/91 TELEPHONE CALLS WITH KLAPIS, LOSOSKI RE: FINANCING ...

**27.** We note that the amount of time taken to research a relatively uncomplicated issue may bear upon the appropriate hourly billing rate. Where more time is taken by a junior associate to research a question which could have been answered by a senior supervisory attorney such that their combined billable hours in dialogue would be substantially less the junior's time spent in marginally productive research is non compensable as inappropriate. We are unable to make such determination, however, again due to a paucity of documentation.

12/11/91 TELEPHONE CALLS LOSOSKI RE: FINANCING ...

12/20/91 CALL FROM KLAIPS RE: ... FINANCING

12/30/91 CALLS DUBIEL, KLAIPS, LOSOSKI RE: FINANCING ...

1/3/92 CALL FROM, FAX TO KLAPIS, ORLISS RE: FINANCING ...

1/13/92 CALL DUBIEL RE: FINANCING.

1/16/92 CONFERENCE WITH G. TASSONE RE: ... FINANCING.

1/17/92 LENGTHY CALL FROM TASSONE RE: FINANCING ... CALL FROM LOSOSKI RE: FINANCING ...

1/21/92 MEET W/ALTERBAUM; TELECONS W/TASSONE, ALTERBAUM, KLAIPS, LOSOSKI, SENZER RE: ... FINANCING ...

1/23/92 MEET W/TASSONE, ALTERBAUM, GREENMAN RE: FINANCING ...

2/3/92 EXTENDED TELECON W/TASSONE RE: FINANCING ...

2/24/92 CALL FROM TASSONE RE: FINANCING ...

---

(ii) *"FUNDING"*

12/12/91 ... CALLS KLAIPS, TASSONE, ALTERBAUM RE: FUNDING ...

1/16/92 MTG W/TASSONE, ALTERBAUM RE: FUNDING ...

2/6/92 CALL FROM TASSONE RE: FUNDING ...

2/7/92 CALLS TO ALBANESE, BRAND, ALTERBAUM, TASSONE RE: FUNDING ...

2/11/92 CALLS ALTERBAUM, TASSONE RE: FUNDING ...

3/18/92 CALLS TO ALTERBAUM RE: FUNDING.

2/10/92 TELECON W/ALTERBAUM RE: FUNDING DOCUMENTS ... CALL FROM TASSONE RE: FUNDING AND AGREEMENTS; CALL ALTERBAUM RE: SAME

---

(iii) *"MEZZANINE FUNDING"*

12/30/91 CALLS ALTERBAUM, ALBANESE RE: MEZZANINE FUNDING

1/3/92 CALL ALTERBAUM RE: AGREEMENT; MEET W/ALTERBAUM RE: MEZZANINE COMMITMENT.

1/6/92 CALLS TASSONE, BRAND (CIT), SENZER RE: MEZZANINE FUNDING; MEET W/ALTERBAUM RE: MEZZANINE FUNDING;

1/7/92 CALLS ALBANESE, ALTERBAUM, LOSOSKI RE: MEZZANINE FUND-ING—COMMITMENT LETTER ...

1/9/92 MT W/ALTERBAUM RE: MEZZANINE/CIT FINANCING

1/10/92 CALL, LETTER ALBANESE RE: MEZZANINE AGREEMENT

1/13/92 MEET W/ALTERBAUM RE: MEZZANINE ...

2/4/92 CONFERENCE CALL W/TASSONE, ALTERBAUM, CALL ALBANESE RE: AGREEMENTS W/MEZZANINE FUND.

2/11/92 CONFERENCE J. ALTERBAUM RE: FINANCING AND CONF. CALL WITH P. KALBAN AND J. ALTERBAUM RE: HEARING ON MEZZANINE FINANCING

2/13/92 CALLS W/TASSONE, KLAIPS, LOSOSKI, BRAND, ALBANESE RE: CRT/MEZZANINE FUNDING, EXTENDED CONFERENCE CALL W/ALBA-NESE AND BRAND.

———————

(iv) *"BLUM FINANCING"*

12/4/91 TELEPHONE CALLS WITH TASSONE, ALTERBAUM RE: BLUM MEET-ING AND CIT AGREEMENT; REVIEW FINANCIALS.

12/16/91 TELEPHONE CALL FROM TASSONE RE: BLUM FINANCING

12/20/91 .... CALL FROM ORLISS AND TO ALTERBAUM RE: BLUM DEAL ...

2/26/92 MEET W/TASSONE, ALTERBAUM, BLUM RE: FINANCING ...

———————

(v) *FUNDING OR FINANCING "AGREEMENTS"*

12/16/91 ... CALLS ALTERBAUM RE: FINANCING AGREEMENTS ...

12/26/91 CALLS KLAIPS, ALTERBAUM, ALBANESE OFCE RE: FUNDING AGREE-MENTS ...

2/14/92 CALLS KLAIPS, TASSONE RE: FUNDING AGREEMENTS;

2/24/92 ... MTG W/ALTERBAUM RE: REVISED FUNDING DEAL ... CALL FROM ORLISS, TO ALBANESE RE: FUNDING AGREEMENTS ...

2/27/92 MT W/ALTERBAUM, CALL ALBANESE, ORLISS RE: LENDING AGREE-MENTS ...

2/28/92 CALLS BRAND, KAGAN RE: LENDING AGREEMENTS CALLS W/BRAND, ALBANESE, FAGAN, FUSCALDO RE: FUNDING CALLS BRAND, ALBA-NESE RE: FUNDING AGREEMENTS

1/7/92 ... CALL SENZER, LOSOSKI RE: FUNDING AGREEMENTS ...

1/8/92 CALL W/LOSOSKI, ALTERBAUM RE: FUNDING AGREEMENTS.

———————

(c) *"ALLENTOWN"*

12/3/91 TELEPHONE CALL REISMAIN RE: ALLENTOWN.

12/5/91 TELEPHONE CALL REISMAN RE: ALLENTOWN.

2/18/92 CALL CAPOBIANCO RE: ALLENTOWN

3/26/92 CALL CAPOBIANCO RE: ALLENTOWN ... CALL REISMAN RE: ALLEN-TOWN,

3/27/92 CALLS LOSOSKI, SENZER, REISMAN, COURT RE: ALLENTOWN;

4/15/92 CONFERENCE CALL W/REISMAN, TASSONE, LOSOSKI RE: ALLEN-TOWN;

4/20/92 CALL FROM CAPOBIANCO RE: ALLENTOWN.

4/22/92 CALL REISMAN RE: ALLENTOWN

4/27/92 CALL FROM·CAPOBIANCO RE: ALLENTOWN

5/4/92 CALLS FROM REISMAN, KLAIPS RE ALLENTOWN

5/6/92 CALL FROM REISMAN RE ALLENTOWN; CALL KLAIPS RE ALLEN-TOWN

5/8/92 CALL REISMAN RE: ALLENTOWN.

───────────

(d) *"PLAN"*

3/2/92 CONFERENCES CLIENT RE PLAN 3/4 (1.50)

3/4/92 MEETING WITH R. ITZLER RE PLAN OF REORGANIZATION.

3/5/92 REVIEW AND REVISE LETTER TO ITZLER RE: PLAN ... CONFER-ENCE CALL W/ALTERBAUM, SENZER RE: PLAN; CALLS ITZLER RE: PLAN, MEET W/GREENMAN RE: PLAN ...

3/9/92 REVIEW LETTER FROM ITZLER RE PLAN; CALL FROM LOSOSKI; MEET W/ALTERBAUM, CALLS W/GREENMAN RE: SAME;

3/10/92 LTR ITZLER RE PLAN.

3/26/92 CALLS SENZER RE: PLAN;

3/30/92 CORRESPONDENCE FROM ITZLER RE: PLAN

3/31/92 CALL FROM SENZER RE: PLAN

4/7/92 · MEET W/LEWITTES RE: PLAN

4/8/92 CALL SENZER RE: PLAN ...

4/13/92 LETTER FROM ITZLER RE: PLAN

4/14/92 CALL FROM LOSOSKI RE: PLAN; CALL FROM BRYERMAN RE: PLAN.

4/15/92 MEET W/ALTERBAUM RE PLAN (2.8) ... MEET W/LEWITTES RE: PLAN ...

4/16/92 CALL ALTERBAUM RE PLAN ... LETTER TO ITZLER RE PLAN (1:6)

4/17/92 CALL SENZER RE PLAN.

4/20/92 CALL SENZER RE PLAN, MOTIONS;

4/27/92 CONF. P. KALBAN RE REORG. PLAN PROVISIONS.

4/27/92 MEET W/LEWITTES RE: PLAN ...

5/4/92 LETTER TO SENZER RE PLAN ...

5/5/92 CALL SENZER, BRYERMAN RE PLAN;

5/11/92 EXTENDED TELECON W/SENZER RE: PLAN ... MEET W/LEWITTES RE: PLAN;

---

(e) *"DISCLOSURE STATEMENT"*

1/13/92 ... MEET W/SHERMAN RE: DISCLOSURE STATEMENT; ...

1/23/92 ... CALLS SHERMAN RE: DISCLOSURE STATEMENTS, CONF. CALL W/KLAIPS, LOSOSKI, SHERMAN RE: DISCLOSURE STATEMENT; ...

1/24/92 TELECON W/ORLISS; MEETING W/SHERMAN RE: DISCLOSURE STATEMENT.

3/25/92 ... MT W/SHERMAN RE: DISCLOSURE STATEMENT ...

5/14/92 ... MEET WITH SHERMAN RE: DISCLOSURE STATEMENT.

5/15/92 ... CONFERENCE CALL LOSOSKI, KLAIPS, SHERMAN RE: ... DISCLOSURE STATEMENT ...

5/18/92 ... MEET W/SHERMAN RE: DISCLOSURE STATEMENT.

5/19/92 ... MEET W/SHERMAN RE:. DISCLOSURE STATEMENT ...

5/21/92 ... MEET W/SHERMAN ON DISCLOSURE STATEMENT; ...

5/22/92 ... MEET W/SHERMAN RE: DISCLOSURE STATEMENT; ...

6/1/92 ... MET WITH SHERMAN RE DISCLOSURE STATEMENT.

---

(f) *BAR ORDER AND EXCLUSIVITY PERIOD*

12/3/92 ... TELEPHONE CALL FROM SENZER RE: BAR ORDER ...

12/9/92 ... PREPARE LETTER TO SENZER RE: BAR ORDER AND MOTION TO EXTEND PERIOD OF EXCLUSIVITY; ...

1/27/92 ... MEET W/SHERMAN RE: SERVICE OF NOTICE OF BAR DATE.

2/6/92 ... CALL FROM KAPLAN RE: BAR ORDER; ...

2/7/92 ... MEET W/FEIN, SHERMAN RE: NOTICES OF BAR DATE ...

2/28/92 ... CONF W/P. KALBAN RE: PARTY IN INTEREST WHO DID NOT RECEIVE NOTICE OF BAR DATE; ...

---

(g) *"HARRISBURG"*

12/5/91 TELEPHONE CALLS WITH KLAIPS, LOSOSKI RE: ... HARRISBURG LEASE; ...

12/11/91 ... CALL LOSOSKI RE: ... HARRISBURG.

12/16/91 ... CALLS SAVAGE, MARTSON RE: HARRISBURG; ...

12/17/91 ... CALLS SAVAGE, KORNSTEIN, MARTSOFF RE: HARRISBURG ...

12/19/91 ... CALL KORNSTEIN RE: HARRISBURG LEASE; ...

1/6/92 ... PREPARE LETTER RE: HARRISBURG PROPERTY; ...

2/7/92 ... CALL FROM KORNSTEIN RE: HARRISBURG PROPERTY; ...

2/14/92 ... CALLS KLAIPS, LOSOSKI RE: HARRISBURG; ...

2/21/92 ... FAX FROM KORNSTEIN RE: HARRISBURG ...

2/24/92 ... CALL KORNSTEIN RE: HARRISBURG: ...

2/25/92 ... CALL LIEBENSON, KORNSTEIN RE: HARRISBURG ...

---

This list is not exhaustive. It merely illustrates that with respect to most or all or the telephone calls, conferences and meetings for which fees are requested in the Final Application, Applicant has failed to meet its burden of proof with respect to the necessity and reasonableness of such services based on the inadequate descriptions thereof.

■■■ Furthermore, as the list demonstrates, the problem of one word descriptions is magnified in a case such as this where the overwhelming majority of the services for which fees are requested are described in such fashion. Where so many of the telephone calls or conferences are described in like fashion by one word, the Applicant has not met its burden of proof since it is impossible to determine whether a call or conference was necessary and compensable or is merely a duplicative service for which compensation is not warranted. Moreover, "[a]ny uncertainties arising because of inadequate records must be resolved against an applicant." *In re Colorado–UTE Elec. Assn., Inc.,* 132 B.R. 174 (Bankr.D.Colo 1991).

■■■ However, notwithstanding the above analysis, we do take notice of the fact that in a case of this magnitude and complexity, with respect to many of the activities set forth above, it was necessary for the Applicant to engage in some telephone calls and conferences or meetings in connection with

such activities. We recognize for example that it would be inconceivable that in drafting the Debtor's plan of reorganization or disclosure statement that the Applicant did not have to engage in some telephone calls or meetings with the creditor's committee, accountants, secured creditors and other parties in interest. Such calls and meetings comprise a part of legal services necessarily performed. Thus, despite inadequate descriptions provided with respect to numerous calls and meetings in connection with a particular activity, equity mandates that we award some measure of compensation despite Applicant's failure of proof as to such services.[28]

Nevertheless, we have a problem in determining the appropriate measure of compensation to award for such services because they are contained within lumped time entries and, except in rare instances, the Applicant has not provided this Court with information as to the *actual* time expended on a telephone call or meeting. Therefore, we are unable to make specific findings as to the *reasonableness* of the time that was expended on such services. Thus, in addition to numerous inadequate descriptions in connection with telephone calls and conferences, Applicant, except in rare situations, has failed to meet its burden of proving that the time expended on *any* of the calls or conferences, including the calls and conferences which are adequately described, within a lumped time entry is reasonable. For example, even though we are willing to exercise our equitable powers to award compensation for a service described as "CALL FROM SENZER RE: PLAN", we do not know how much time was expended on the service and therefore, as to such service, Applicant fails in its burden of proving that the time expended on a particular service is reasonable. However, rather than denying compensation entirely for calls or conferences on the basis that they are inadequately described and/or on the ground that we cannot determine whether the time expended on such services

is reasonable, where such services are contained in the lumped time entries, we will award compensation based on the minimum time allocation that we believe is appropriate as to telephone calls and meetings or conferences. Such belief is based on our own experience as an attorney practicing in the insolvency area and our familiarity with the appropriate services performed by other attorneys whose appropriately established billing rates equates with those of the Applicant in other cases before us of similar magnitude and complexity. Thus, as to the other telephone calls and conferences contained in the lumped time entries, we will award compensation based on .1 hours (or six minutes) per telephone call and .2 hours (or twelve minutes) per conference. In the rare instances where Applicant has provided us with the time expended on a particular service, we will not deny compensation on this ground alone.

### (B) *DUPLICATIVE SERVICES WITHIN THE LUMPED TIME ENTRIES*

In addition to the many inadequately described services within the lumped time entries, numerous services within such lumped time entries are duplicative of prior services for which fees are requested. We note that many of the services discussed herein concern revising or reviewing documents. As set forth above, there are times when revision or review of a document is necessary, appropriate and compensable. However, with respect to the services discussed herein in connection with revising or reviewing documents, as to the first time such service appears, we are not provided with sufficient information to sustain a finding that such service is compensable. Moreover, as to each subsequent time the same service appears, we are unable to award compensation on the basis that such service is duplicative of the first time the service appears.

---

**28.** We suggest that the bar not rely on this equitable analysis or the mistaken belief that this Court's sense of what must have been done will serve as a substitute for a full description of services performed and thorough explanation of their necessity and appropriateness. Not only will every ambiguity and question be resolved against an applicant, but failure to provide the required detail will weigh heavily upon a determination of an appropriate billing rate.

For example, on three separate occasions the service "REVISE BAR ORDER" appears in the lumped time entries. We note that a claims bar order is generally a one or two page boilerplate order. Thus, it is questionable as to whether the first "REVISE BAR ORDER" would be compensable even if we were provided with information as to the necessity and purpose of the revision. However, we need not decide this issue because we are not provided with sufficient information and therefore, the first "REVISE BAR ORDER" is not compensable. As to the second and third "REVISE BAR ORDER" compensation is not warranted as these services duplicate the first.

Similarly, on approximately twenty different occasions the service "REVISE PLAN" appears in the lumped time entries. We are never informed as to which part of the plan was revised or why the revision was necessary. Thus, we are unable to find even the first "REVISE PLAN" compensable because we are not provided with sufficient information.[29]

Other examples of duplicative non-compensable services in connection with revising or reviewing documents which appear in the lumped time entries include the following services:

| | | | |
|---|---|---|---|
| 12/03/91 | REVIEW DRAFTS RE THIRD INTERIM FINANCING AGREEMENT [30] | PHK | * * |
| 12/5/91 | REVISE MOTION RE: EXCLUSIVITY PERIOD ... | PHK | * * |
| 12/20/91 | ... REVIEW BLUM DOCUMENTS ... | PHK | * * |
| 12/30/91 | ... REVIEW FUNDING AGREEMENTS ... | PHK | * * |
| 1/9/92 | ... REVIEW AGREEMENT ... | PHK | * * |
| 1/2/92 | ... REVISE APPLICATION AND ORDER RE: MEZZANINE ... | PHK | * * |
| 1/10/92 | ... REVISE ORDER AND APPLICATION ON MEZZANINE FUNDING ... | PHK | * * |
| 7/6/92 | ... DRAFT SECOND INTERIM FEE APPLICATION | AHS | * * |
| 7/7/92 | ... DRAFT AND REVISE FEE APPLICATION ... | AHS | * * |
| 7/8/92 | DRAFT AND REVISE APPLICATION FOR FEES ... FURTHER DRAFTING AND REVISING OF FEE APPLICATION | AHS | * * |
| 7/27/92 | ... REVISE AND PROOFREAD FEE APPLICATION | AHS | * * |

Moreover, there are several instances in the lumped time entries where more than one attorney has billed the estate for intraoffice conferences or meetings or court appearances. The following are examples of such double billing:

(1) 2/04/92 ... REVISE NOTICE OF MOTION AND DISCUSS JC
 WITH PHIL KALBAN ...

 2/04/92 ... MEET W/CARLSON RE: FEE APPLICATION ... PHK

---

**29.** This same analysis applies to the services pertaining to revising the disclosure statement which are set forth in the discussion regarding the disclosure statement.

**30.** Applicant previously billed two (2) hours for the same service on 12/2/91.

| | | | |
|---|---|---|---|
| (2) | 2/18/92 | ... DISCUSSIONS WITH J. CARLSON RE: [FEE APPLICATION] | LR |
| | 2/18/92 | CALL TO LINDA ROWE RE EXHIBITS TO THE FEE APPLICATION | JC |
| (3) | 4/15/92 | ... MEET W/LEWITTES RE: PLAN ...[31] | PHK |
| | 4/27/92 | ... MEET W/LEWITTES RE: PLAN ...[32] | PHK |
| (4) | 5/4/92 | MEET W/P. KALBAN RE PREFERENCE ANALYSIS AND CLAIMS ANALYSIS ... | AHS |
| | 5/4/92 | ... MET W/SHERMAN ... | PHK |
| (5) | 5/19/92 | MEET WITH P. KALBAN RE DISCLOSURE STATEMENT AND VARIOUS INFORMATION WHICH IS NECESSARY TO COMPLETE THE DOCUMENT; ... | AHS |
| | 5/19/92 | REVIEW DOCKET, MEET W/SHERMAN RE: DISCLOSURE STATEMENT ... | PHK |
| (6) | 6/25/92 | ... MEET WITH A. TARR RE TAX | AHS |

---

CONSEQUENCES OF THE PLAN ...[33]

Finally, other examples of duplicative non-compensable services which appear in the lumped time entries include the second listed service in the following sets of services:

(i)

| | | | | |
|---|---|---|---|---|
| 5/19/92 | ... T/C TO H–KORCARZ RE TAX RETURNS | AHS | * * | |
| 5/19/92 | T/C TO H. KORCARZ RE TAX RETURNS ... | AHS | * * | |

(ii)

| | | | | |
|---|---|---|---|---|
| 12/9/91 | PREPARE 10–K ... | NB | * * | |
| 12/10/91 | ... PREPARATION OF INFO RE: 10–K ... | PHK | * * | |

(iii)

| | | | | |
|---|---|---|---|---|
| 2/03/92 | REVIEW CONSOLIDATED FINANCIAL STATEMENTS FOR PRESENTATION TO CREDITORS' COMMITTEE; T/C TO J. MORGAN AT GRANT THORTON AND MEETING W/KALBAN. | AHS | 1.50 | 142.50 |

**31.** On 4/15/92 "JOL" billed .5 hours for the following non-lumped time entry:
REVIEW OF POSEIDON REORGANIZATION PLAN WITH P. KALBAN

**32.** On 4/27/92 "JOL" billed .5 hours for the following non-lumped time entry:

CONF. P. KALBAN RE REORG. PLAN PROVISIONS

**33.** On 6/25/92 "AJT" billed for the following non-lumped time entry:

CONF W/KALBAN, SHERMAN RE: SEC. 108

| | | | | |
|---|---|---|---|---|
| 2/04/92 | T/C TO JOHN MORGAN, GRANT THORNTON MEET W/KALBAN RE CONSOLIDATING FINANCIALS REVIEW FINANCIAL INFORMATION. | AHS | .50 | 47.50 |

---

**(C) *LUMPED TIME ENTRIES—COMPENSABLE HOURS***

In addition to the general problem of "lumping", a further problem exists with respect to many of the services within the lumped time entries such as inadequately described or duplicative services. Accordingly, we have devised the following method for determining the maximum compensation that we may authorize for the lumped time entries contained in the Final Application.

First, we are unable to authorize any compensation for the services within the lumped time entries for which there are "per se" inadequate descriptions. We have listed examples above.

Second, we are unable to authorize compensation for any of the services within the lumped time entries pertaining to research which we have listed above.

Third, we will award compensation based on .1 hours and .2 hours, respectively, for telephone calls and meetings which are inadequately described or for which Applicant has failed to set forth the specific time expended on such calls or meetings. Moreover, in the rare instances where Applicant has set forth within a lumped time entry the time expended on a particular telephone call or meeting, and where the appropriateness of such call is apparent, we will award compensation based on the total amount of time claimed.

Fourth, compensation is denied or reduced for the services within the lumped time entries for which a denial or reduction of compensation has been discussed prior to our discussion regarding lumped time entries.

Fifth, we are unable to authorize compensation for duplicative services within the lumped time entries. Many of these services are listed above in our discussion regarding duplicative services within the lumped time entries. In addition, many of these services are set forth in our discussion above regarding the disclosure statement, interim fee application and the services in connection with the amendment of schedules.

Finally, notwithstanding the fact that by lumping services, Applicant has failed in its burden of proof, where it is appropriate we will estimate the minimum amount of time that a qualified competent attorney well versed in bankruptcy law would necessarily expend on a particular service(s) that is otherwise adequately described and not duplicative and authorize compensation according to this estimate.[34]

The following lumped time entries and the analysis which follows illustrate the steps listed above which we have taken in determining the amount, if any, of compensation authorized for the lumped time entries.

| | | | | |
|---|---|---|---|---|
| (1) 12/10/91 | TELEPHONE CALL WITH BRENNER; PREPARATION OF INFO RE: 10–K; TELEPHONE CALL SENZER RE: ORDERS; TELECON W/LOSOSKI RE: APPLICATIONS. | PHK | 1.25 | 293.75 |

---

**34.** In some instances where all of the services within a lumped time entry are adequately described and are not duplicative, we have been able to award compensation based on the total amount of hours claimed for such time entry. Thus, as to these lumped time entries, we have determined that all of the hours for which Applicant requests fees as to these entries are compensable. We have done so only to the lumped time entries where all of the services therein would be otherwise compensable but for the fact that such services are lumped within a single time entry and where the total time allegedly expended on the lumped time entry approximately equates to the aggregate time that estimate to be appropriate for each service.

Compensation for this lumped time entry cannot be authorized for the following reasons. First, as to the service denoted "TELEPHONE CALL WITH BRENNER", this is a classic example of a service which we described above as containing a "per se" inadequate description as Applicant does not inform this Court as to the purpose or subject matter of the call. Second, as we previously held, the service described as "PREPARATION OF INFO RE: 10–K" duplicates a prior time entry and is therefore not compensable. Finally as to the telephone calls regarding "ORDERS" and "APPLICATIONS", again these descriptions are "per se" inadequate as lacking information connecting them to the orders and applications to which they relate.

| | | | | | |
|---|---|---|---|---|---|
| (2) | 3/3/92 | TELECONS W/FUSCALDO, ALTERBAUM RE: AGREEMENTS TO BRING TO COURT; CALLS BRAND, ALBANESE RE: FUNDING AGREEMENTS; MEET W/LOSOSKI, KLAIPS, TASSONE, ALTERBAUM AT PCK & K (1.3); MTG W/ITZLER, SENZER, CREDITORS' COMMITTEE, LOSOSKI, TASSONE, KLAIPS, MORGAN, ALTERBAUM AT ITZLER OFFICE (4.5) [35]; MEET W/TASSONE, ALTERBAUM; CONF. CALL GREENMAN AT PCF & K (2.2); CALLS LEWITTES. | PHK | 8.40 | 1,974. |

Compensation for this time entry is reduced for the following reasons.

As to the services described as (i) MEET W/LOSOSKI, KLAIPS, TASSONE, ALTERBAUM AT PCK & K (1.3),[36] (ii) MTG W/ITZLER, SENZER, CREDITORS' COMMITTEE, LOSOSKI, TASSONE, KLAIPS, MORGAN, ALTERBAUM AT ITZLER OFFICE (4.5) [37], (iii) MEET W/TASSONE, ALTERBAUM; CONF. CALL GREENMAN AT PCF & K (2.2), and (iv) CALLS LEWITTES, appropriateness of compensation has not been established as the entry does not disclose either the subject matter of the meetings or the telephone call. However, as indicated above, we will award compensation based on .2 hours for the two telephone calls to "BRAND" and "ALBANESE" regarding the "FUNDING AGREEMENTS".

**35.** An additional ground for denying compensation for "PHK's" attendance at this meeting is that the meeting was attended by two of Applicant's attorneys ("PHK" and "JA"), both of whom billed for their attendance at the meeting. As set forth above, only one attorney may charge the bankruptcy estate for a conference or meeting unless an adequate explanation is given as to the necessity of having additional attorneys attend. *See In re Adventist Living Ctrs., Inc.* 137 B.R. at 716; *In re Office Prods. of America,* 136 B.R. at 977. No such information has been offered.

**36.** Between this meeting and the meetings listed in items number 4 and 5, there is a total of 8 hours of meetings and not once are we informed as to the nature or subject matter of such meetings. Rather, Applicant has merely provided information regarding who attended the meetings and the location at which such meetings were held.

**37.** An additional ground for denying compensation for "PHK's" attendance at this meeting is that the meeting was billed by both "PHK" and "JA" (see time entry dated 3/2/92 as to "JA"). See footnote 35.

| | | | | | |
|---|---|---|---|---|---|
| (3) | 1/7/92 | CALLS ALBANESE, ALTERBAUM, LOSOSKI RE: MEZZANINE FUNDING–COMMITMENT LETTER; REVISE BAR ORDER; CALL SENZER, LOSOSKI RE: FUNDING AGREEMENTS; ARRANGE CONFERENCE CALL; CALL AND LETTER TO KORNSTEIN RE: HARRISBURG MOTION; PREPARE STIPULATION; FAX SAME TO KORNSTEIN. | PHK | 3.80 | 893.00 |

---

■ Based on the earlier analysis regarding revising or reviewing documents and duplicative services, compensation may not be awarded for those portions denoted as "REVISE BAR ORDER". Further, compensation is denied for the service denoted as "ARRANGE CONFERENCE CALL" and authorized for a total of .3 hours (3 telephone calls) for the calls regarding the "MEZZANINE FUNDING–COMMITMENT LETTER" and for a total of .2 hours (2 telephone calls) for the calls regarding the "FUNDING AGREEMENTS" and for a total of .1 hour for the call regarding the "HARRISBURG MOTION." Finally, we will award compensation based on .7 hours for the preparation of the stipulation regarding, we assume, the "Harrisburg Motion". We find that his is the minimal amount of time that a competent bankruptcy attorney would need to draft a stipulation regarding a vacate stay motion.

| | | | | | |
|---|---|---|---|---|---|
| (4) | 12/12/91 | TELEPHONE CALL AND LETTER TO YOUNG RE: VIRGINIA INSTALLATION; CALL FROM KORCARZ RE: ACCOUNTING; CALLS KLAIPS, TASSONE, ALTERBAUM RE: FUNDING; CALL SENZER RE: CONSULTANT; PREPARATION OF OPPOSITION TO MOTION TO LIFT STAY; REVIEW LETTER AND APPLICATIONS FROM SENZER RE: BAR DATE AND EXTENSION OF EXCLUSIVITY PERIOD; CALLS SENZER; PREP. OF DOCUMENTS FOR COURT. | PHK | 3.00 | 705.00 |

---

■ Entitlement to compensation for the telephone calls regarding the "VIRGINIA INSTALLATION", "ACCOUNTING" and "CONSULTANT", simply has not been established. Descriptions therein are inadequate and on their face. In addition, compensation for the services denoted "CALLS SENZER" and "PREP. OF DOCUMENTS FOR COURT" suffer from the same deficiencies discussed above. Compensation, however, is authorized for .3 hours as to the three telephone calls regarding "FUNDING" and for 1.0 hours for the service denoted as "PREPARATION OF OPPOSITION TO MOTION TO LIFT STAY" as this is the bare minimum amount of time we find to be generally appropriate for this service.

| | | | | | |
|---|---|---|---|---|---|
| (5) | 12/13/91 | CALLS KORNSTEIN, LOSOSKI, KLAIPS, SHERMAN; PREPARE RESPONSE RE: RESOLUTION TRUST MOTION. | PHK | 1.25 | 293.75 |

No compensation is authorized for the telephone calls as we are not informed of their subject matter and compensation is denied for the preparation of the response regarding the Resolution Trust motion because this is the same service for which compensation was authorized in the previous example,, i.e. "PREPARATION OF OPPOSITION TO MOTION TO LIFT STAY".

| | | | | | |
|---|---|---|---|---|---|
| (6) | 1/14/92 | REVIEW DOCUMENT, LETTER FROM ALBANESE; TELECON W/KLAIPS, ALBANESE, LOSOSKI; CONFERENCE CALL W/ALBANESE, TASSONE, BLUM; CALL FROM SENZER RE: STATUS CONFERENCE; REVISE DOCUMENTS; PREPARE FOR COURT. | PHK | 3.30 | 775.50 |

We are unable to approve compensation for the services described as (i) REVIEW DOCUMENT, LETTER FROM ALBANESE, (ii) TELECON W/KLAIPS, ALBANESE, LOSOSKI, (iii) CONFERENCE CALL W/ALBANESE, TASSONE, BLUM, (iv) REVISE DOCUMENTS, and (v) PREPARE FOR COURT. The descriptions as to all of these services falls within the category of descriptions that are "per se" inadequate. As to the telephone call regarding the "STATUS CONFERENCE" compensation for .1 hour is authorized.

| | | | | | |
|---|---|---|---|---|---|
| (7) | 2/13/92 | LETTERS, ORDERS, DOCUMENTS FROM GOLDBLATT AND FROM SCOBLIONKO RE: FLECK CASE; CALLS W/TASSONE, KLAIPS, LOSOSKI, BRAND, ALBANESE RE: CRT/MEZZANINE FUNDING, EXTENDED CONFERENCE CALL W/ALBANESE AND BRAND. | PHK | 1.90 | 446.50 |

Compensation for the service described as "LETTERS, ORDERS, DOCUMENTS FROM GOLDBLATT AND FROM SCOBLIONKO RE: FLECK CASE" cannot be authorized as we are unable to determine what legal service was performed. Similarly compensation for the "EXTENDED CONFERENCE CALL W/ALBANESE AND BRAND" is unavailable as we are not informed of the subject matter of the conference call. Moreover, the time entry already seeks fees for calls to "ALBANESE" and "BRAND". As to the calls to "TASSONE, KLAIPS, LOSOSKI, BRAND, ALBANESE RE: CRT/MEZZANINE FUNDING" we will authorize compensation for .5 hours for the five telephone calls therein.

| | | | | | |
|---|---|---|---|---|---|
| (8) | 1/14/92 | REVIEW DOCUMENT, LETTER FROM ALBANESE; TELECON W/KLAIPS, ALBANESE, LOSOSKI; CONFERENCE CALL W/ALBANESE, TASSONE, BLUM; CALL FROM SENZER RE: STATUS CONFERENCE; REVISE DOCUMENTS; PREPARE FOR COURT. | PHK | 3.30 | 775.50 |

Compensation for "REVIEW DOCU-MENT" and "REVISE DOCUMENTS" may not be authorized as we are not informed as to which document was reviewed and which documents were revised or the purpose for such review or revision. Compensation is awarded for .1 hours for the telephone call to "SENZER" regarding status conference. As to the other telephone calls within this lumped time entry, we are not informed of their subject matter.

The examples set forth above are listed merely to illustrate our analysis with respect to compensation for the lumped time entries in the Final Application. Providing such an analysis for each and every lumped time entry would be unwieldy and unnecessarily duplicative. Thus, rather than list each lumped time entry,[38] we will reference each lumped time entry by the number which appears to the left of each time entry in the Final Application (hereinafter, the "Entry Number")[39] and briefly state why compensation may or may not be available. Except where we deem it appropriate, we will not set forth a separate analysis for our conclusions as to a particular time entry as the examples above adequately detail the analysis we have used with respect to the lumped time entries. For example, we will award compensation for .2 hours for the telephone calls in the following lumped time entry whose Entry Number is 612 [compensation for "Review Financials" is denied for the reasons set forth throughout this decision]:

| | | | | |
|---|---|---|---|---|
| 12/4/91 | TELEPHONE CALLS WITH TASSONE, ALTERBAUM RE: BLUM MEETING AND CIT AGREEMENT; REVIEW FINANCIALS. | PHK | .75 | 176.25 |

---

However, rather than list the full time entry herein and state our analysis thereto, this time entry will be referenced in this part of this decision as follows:

Entry Number 612 Compensation awarded for .2 hours (2 telephone calls).

Accordingly, the following is a list of the lumped time entries that have not been fully set forth herein referenced by their Entry Number for which we have denied or reduced compensation or in some instances for which we have awarded compensation for the full amount[40] of time claimed for a particular lumped time entry.

| ENTRY NUMBER | COMPENSATION IN TERMS OF COMPENSABLE HOURS |
|---|---|
| 579 | .1 hours (1 telephone call); .2 hours (meeting) |
| 609 | 1.5 hours for the time claimed by Applicant |
| 612 | .2 hours (2 telephone calls) |
| 621 | 3.2 hours for the time claimed for meeting regarding "FINANCING"; .2 hours (2 telephone calls) |
| 631 | .5 hours (5 telephone calls) |
| 639 | .5 hours for the time claimed by Applicant |
| 647 | .1 hours (1 telephone call) |
| 668 | .2 hours (2 telephone calls) |
| 708 | .5 hours (5 telephone calls); 1.0 hours estimated time to "PREP. REPLY ON MOTION TO EXTEND EXCLUSIVITY" |

**38.** The Final Application including the time sheets annexed thereto are on file with this Court and are available for inspection by the public.

**39.** For example, in the following time entry the Entry Number is "654":

| | | | | | |
|---|---|---|---|---|---|
| 654 | 12/10/91 | DISCUSSIONS WITH KALBAN RE FEE APPLICATION | JC | .25 | 48.75 |

**40.** Where we have done so, we have described the award of compensation as follows: ".75 hours for time claimed by Applicant".

| | |
|---|---|
| 730 | .3 hours (3 telephone calls); 2.5 hours estimated time for appearance in court on motion for relief from stay |
| 745 | 2.5 hours for the time claimed for appearance in court on exclusivity motion; .3 hours (3 telephone calls) |
| 754 | .3 hours (3 telephone calls) |
| 764 | .3 hours (3 telephone calls) |
| 775 | 2.50 hours for time claimed by Applicant |
| 784 | .75 hours for time claimed by Applicant |
| 793 | .3 hours (3 telephone calls) |
| 806 | 2.0 hours for the time claimed by Applicant |
| 820 | 1.1 hours for the time claimed as to "PREPARE APPLICATION, ORDER, NOTICE RE: FUNDING"; .5 hours for five telephone calls regarding "FUNDING" or "MEZZANIN FUNDING" |
| 836 | .5 hours (5 telephone calls) [41] |
| 849 | .3 hours (3 telephone calls); .2 hours (meeting) |
| 855 | 5.0 hours for the time claimed by Applicant |
| 862 | .4 hours (4 telephone calls); .2 hours (meeting); |
| 874 | .6 hours (6 telephone calls) |
| 884 | .2 hours (2 telephone calls) |
| 890 | .2 hours (meeting); .5 hours estimated time for review of letter and motion regarding "FLECK/HOFFINGER P.I. ACTION"; calls to "MCGOWAN", "MELMAN", and "ALBANESE" not compensable as no information provided as to subject matter of calls |
| 902 | .1 hours (1 telephone call); the revision to order and application regarding Mezzanine funding is not compensable for the reasons stated herein regarding revisions and moreover, this is the second time the order and application was revised |
| 911 | .4 hours (2 meetings); .1 hours (1 telephone call); review of motion by "MELMAN" regarding "FLECK" not compensable as this service is duplicative and we have awarded compensation for this service in Entry Number 890 |
| 940 | 2.8 hours for the time claimed for appearance in court on status conference; .1 hours (1 telephone call to "ALTERBAUM"); .2 hours (meeting) |
| 963 | 1.7 hours for the time claimed for meeting with Tassone and Alterbaum; .2 hours (2 telephone calls) |
| 970 | 1.0 hours for the time claimed by Applicant |
| 974 | .2 hours (2 telephone calls); .2 hours (conference) |
| 984 | .4 hours (4 telephone calls) |
| 997 | .5 hours (5 telephone calls) |
| 1013 | 2.5 hours for the time claimed for meeting regarding "FINANCIALS, PREFERENCES, LIQUIDATION VALUE"; .2 hours (meeting with "GREENMAN" and "ALTERBAUM") |
| 1052 | .5 hours for the time claimed for the telephone calls regarding materials for disclosure statement; .5 hours for the time claimed for preparation of claims summary for disclosure statement; compensation as to the remaining services have previously been determined above |

**41.** The second call to "ORLISS" is not compensable as we cannot distinguish between the first call to "ORLISS" regarding "FUNDING" and the second call to "ORLISS" regarding "FUNDING" within this time entry.

1066 2.3 hours for the time claimed for the meeting therein; .2 hours (2 telephone calls)

1089 .1 hours (1 telephone call)

1095 .2 hours (meeting)

1131 .2 hours (conference); .1 hours (conference call)

1144 .75 hours for the time claimed for calls regarding claims analysis and preparation of claims analysis; compensation as to the remaining services have previously been determined above

1160 .3 hours (conference call and 2 telephone calls)

1174 .75 hours for the time claimed by Applicant

1182 .75 hours for the time claimed by Applicant

1196 3.9 hours for the time claimed for the meeting at "WOLF'S OFFICE" regarding "PLAN FINANCES, PROJECTION [and] STATUS CONFERENCE"; .2 hours (meeting with "LEWITTES"); .1 hours (1 telephone call to "DIMARIA")

1212 .1 hours (1 telephone call); .2 hours (meeting)

1225 .1 hours (1 telephone call); .2 hours (meeting)

1243 .3 hours (telephone calls to "TASSONE", KLAIPS" and "BRYERMAN"); .2 hours (meeting); compensation denied for call regarding advertising bar date as such service is secretarial in nature

1263 .3 hours (3 telephone calls); compensation denied for telephone calls from "BRYERMAN" and "AUGEN" and "MASSA" as the subject matter of the calls is not provided; .5 hours estimated time to prepare for court hearing on "FLECK/HOFFINGER"

1274 1.2 hours estimated time to review financial statements for presentation to creditor's committee; telephone call and meeting not compensable as no information as to subject matter of call or meeting

1286 .1 hours (telephone call to chambers); "CALL TO LINDA ROWE" not compensable as this is the second call made by "JC" on this date to "LINDA ROWE" and moreover, no information is provided as to the subject matter of the call

1292 compensation denied; "CALL TO LINDA ROWE ..." not compensable as this is the third call made by "JC" on this date and the subject matter of this call concerned the Southern District of New York guidelines regarding fee applications and such guidelines are irrelevant in this *Eastern* district case

1298 .8 hours (8 telephone calls); .2 hours (meeting)

1307 .1 hours (1 telephone call); .2 hours (meeting)

1322 .1 hours (1 telephone call); no compensation awarded for submitting notice of motion to Mr. Kalban for his review as this is not a compensable legal service

1338 3 hours estimated time for preparation and appearance in court on "HOFFINGER" motion

1348 .3 hours (3 telephone calls)

1359 1.5 hours for the time claimed for drafting letters regarding personal injury claims; compensation previously denied for .75 hours claimed for sending out bar date notices

1374 .6 hours (6 telephone calls); .2 hours (meeting)

1384 9.0 hours for the time claimed by Applicant

1402 .1 hours (1 telephone call); the remaining services other than the preparation of letters are clerical and compensation is denied therefore based on the reasons set forth above [see DISALLOWANCE # 9 (2)]; as to the preparation of letters, compensation is denied as we are not informed as to the subject matter thereof

1427 .4 hours (4 telephone calls); compensation denied as to meeting because no information regarding subject matter thereof other than that it concerned "leases"

1451 .1 hours (conference call); .2 hours (meeting)

1457 .3 hours (3 telephone calls)

1491 .5 hours (5 telephone calls)

1502 compensation denied; compensation is denied for the call to "LINDA ROWE" as this is one of the services previously discussed in our discussion regarding services within lumped time entries where more than one attorney billed for the same service; compensation for the revisions to the documents in this time entry is denied for the reasons stated throughout this decision regarding such revisions; submitting documents to "MR. ALTERBAUM" is not a legal service

1510 5.75 hours for the time claimed by Applicant

1533 .1 hours (1 telephone calls); .2 hours estimated time to draft letter enclosing fee applications and begin preparing affidavits of service

1544 .2 hours (2 telephone calls)

1557 .8 hours (8 telephone calls); .6 hours (3 meetings)

1574 .9 hours (9 telephone calls); .5 hours estimated time to review stipulation and order and prepare for court on motion for relief from stay

1597 3.4 hours for the time claimed in connection with appearance in court regarding Harrisburg property; .2 hours (meeting); as to preparation of the order to show cause regarding financing order, compensation is awarded for this service in Entry Number 1606

1606 2.7 hours for the time claimed for preparing order to show cause and application for lending agreements; .3 hours (3 telephone calls); .2 hours (meeting)

1626 .7 hours (7 telephone calls)

1637 .2 hours (conference); telephone calls not compensable as the subject matter thereof is not provided

1645 3.5 hours for the time claimed for the 3/4 meeting at Itzler's office and the 3/4 conference with client; compensation previously denied for remaining services

1655 .4 hours (4 telephone calls regarding "FUNDING"); .5 hours (3 telephone calls and one meeting regarding "MEETING W/CREDITORS' COMMITTEE")

1678 1.0 hours for the time claimed by Applicant

1686 1.4 hours for the time claimed for revision of order to show cause and application to reflect changes in agreements; .3 hours (3 telephone calls)

1696 .2 hours (telephone conferences with "TASSONE"; we are not informed as to the number of such conferences other than describing the conferences in the

| | |
|---|---|
| | plurality; thus we will award compensation for 2 conferences); .2 (meeting); no compensation awarded for review of financials as we are not informed as to the purpose or necessity of such review |
| 1705 | .2 hours (conference) |
| 1712 | .7 hours (7 telephone calls); .2 hours (meeting) |
| 1723 | 7.4 hours for the time claimed by Applicant |
| 1733 | .5 hours for the time claimed by Applicant |
| 1737 | 9.5 hours for the time claimed by Applicant |
| 1748 | .3 hours (3 telephone calls); .3 hours estimated time to prepare affidavit of service; 1.0 hours estimated time to prepare opposition papers regarding Harrisburg |
| 1764 | .2 hours (meeting) |
| 1769 | 1.0 hours (10 telephone calls) |
| 1784 | .2 hours (meeting) |
| 1789 | .5 hours for the time claimed by Applicant |
| 1800 | .2 hours (2 telephone calls); .2 hours (meeting with "ALTERBAUM"); 3.0 hours estimated time for preparation and appearance in court; as to the other meetings in this time entry, compensation is denied as we are not informed as to the subject matter of such meetings |
| 1825 | .6 hours (6 telephone calls) |
| 1833 | .2 hours (conference with "ALTERBAUM"); the remaining conferences are not compensable because we are not informed as the purpose or subject matter of the meetings |
| 1845 | .2 hours (meeting) |
| 1850 | 1.25 hours for the time claimed by Applicant |
| 1865 | .1 hours (1 telephone call); 1.0 hours estimated time to prepare opposition papers regarding Allentown |
| 1875 | .1 hours (1 telephone call) |
| 1880 | .1 hours (1 telephone call) |
| 1899 | .1 hours (1 telephone call) |
| 1910 | .5 hours (5 telephone calls) |
| 1922 | .1 hours for the telephone call regarding Staten Island property; compensation is denied for the meeting with "LEVIN" as Levin also billed for this meeting for which we awarded compensation and no explanation is provided as to the necessity of having two attorney's bill for the same meeting; as to the service denoted "REVISE PLAN" we have previously discussed such services above |
| 1928 | 2.2 hours awarded for time claimed for the meeting regarding. claims and the plan; .1 hours (1 telephone call); .2 hours (meeting with "SHERMAN") |
| 1935 | .6 hours (6 telephone calls); 1.0 hours estimated time for negotiations regarding lease |
| 1944 | .4 hours (4 telephone calls) |
| 1954 | .1 hours (1 telephone call); .3 hours estimated time to review operating reports |
| 1978 | .3 hours (3 telephone calls) |
| 1991 | compensation denied |
| 2001 | .1 hours (1 telephone call); .2 meeting with "SHERMAN"; .3 hours estimated time to review "NEW JERSEY SUMMONS AND COMPLAINT RE: SHAH" |
| 2018 | .3 hours (3 telephone calls) |

| | |
|---|---|
| 2027 | .1 hours (1 telephone call); .4 hours estimated time to "PREPARE GENERAL RELEASE RE: HARRISBURG" |
| 2037 | .5 hours (5 telephone calls); .2 hours (meeting) |
| 2054 | .6 hours (6 telephone calls) |
| 2062 | .3 hours (3 telephone calls) |
| 2075 | .5 hours (5 telephone calls) |
| 2087 | .3 hours (3 telephone calls) |
| 2095 | .2 hours (2 telephone calls); .5 hours estimated time for "PREPARE ORDER AND NOTICE RE: PRE-PETITION FEES" |
| 2110 | 2.8 hours awarded for time claimed for the meeting regarding the plan; .5 hours (5 telephone calls) |
| 2122 | .2 hours (2 telephone calls); 1.0 hours estimated time for preparation of stipulation and order regarding "ALLENTOWN" |
| 2130 | .1 hours (1 telephone call); .2 hours (conference) |
| 2134 | .2 hours (2 telephone calls) |
| 2138 | .3 hours (3 telephone calls) |
| 2144 | .6 hours (6 telephone calls) |
| 2154 | 2.8 hours for the time claimed for appearance in court on status conference; .1 hours (1 telephone call) |
| 2164 | .5 hours estimated time for preparation of "ALLENTOWN" order |
| 2169 | 1.5 hours awarded for time claimed by Applicant |
| 2182 | .1 hours (1 telephone call) |
| 2188 | .2 hours (2 telephone calls) |
| 2196 | .4 hours (4 telephone calls) |
| 2208 | .4 hours (4 telephone calls) |
| 2217 | .2 hours (meeting) |
| 2223 | .6 hours (6 telephone calls); .2 hours (meeting) |
| 2233 | .5 hours (5 telephone calls) |
| 2249 | .9 hours (9 telephone calls) |
| 2260 | .1 hours (1 telephone call); .2 hours (meeting) |
| 2267 | .1 hours (1 telephone call) |
| 2271 | .4 hours (4 telephone calls); .2 hours (meeting) |
| 2286 | .4 hours (4 telephone calls); 3 hours claimed for time preparing and attending 341 meeting |
| 2311 | .2 hours (2 telephone calls) |
| 2322 | 1.30 hours for the time claimed by Applicant |
| 2340 | .1 hours (1 telephone call) |
| 2357 | .2 hours (2 telephone calls); .2 hours (1 telephone call) |
| 2374 | .2 hours (1 telephone call) |
| 2379 | .2 hours (1 telephone call) |
| 2386 | .6 hours (6 telephone calls) |
| 2398 | .2 hours (2 telephone calls); compensation is not warranted for the research "RE NOTICE REQUIREMENTS FOR FILING DISCLOSURE STATEMENT AND PLAN" [42] |
| 2407 | .6 hours (6 telephone calls); 2 hours time claimed for appearance in court on status conference |
| 2420 | 1.20 hours for the time claimed by Applicant |

| | | | |
|---|---|---|---|
| 2432 | .4 hours (4 telephone calls); .2 hours (2 telephone calls) | | sable as compensation for review awarded in Entry Number 2548 |
| 2444 | compensation awarded for the full 2.20 hours claimed by Applicant less .2 hours estimated for the revision to the disclosure statement | 2558 | .1 hours (1 telephone call); review of claims analysis not compensable as it is duplicative; fax papers not compensable as it is not a legal service |
| 2450 | .1 hours (1 telephone call); .2 hours (meeting) | 2565 | 1.0 hours estimated time to proofread disclosure statement |
| 2455 | 3.5 hours awarded for the time claimed by Applicant | 2570 | 1.25 estimated time for amending schedules; no compensation for "REVIEW AND REVIEW DISCLOSURE STATEMENT" |
| 2472 | compensation awarded for the full 1 hour claimed by Applicant less .2 hours estimated for the revision to the disclosure statement | 2580 | .2 hours (2 telephone calls); .2 hours (meeting); amendment to schedules not compensable [see discussion regarding "DISALLOWANCE # 7"] |
| 2477 | .4 hours awarded for the time claimed by Applicant | 2592 | 2.5 hours for the time claimed by Applicant |
| 2483 | .3 hours awarded for the time claimed by Applicant | 2605 | 2.5 hours for the time claimed by Applicant |
| 2489 | .3 hours awarded for the time claimed by Applicant | 2608 | compensation denied for reasons stated throughout this decision |
| 2493 | .2 hours (meeting); .3 hours estimated time to review operating reports | 2613 | compensation denied; revision of schedules not compensable [see discussion regarding "DISALLOWANCE # 7"]; "FED EX PACKAGE …" is not a compensable legal service |
| 2499 | .2 hours (2 telephone calls) | | |
| 2505 | .5 hours awarded for the time claimed by Applicant | | |
| 2508 | .1 hours (1 telephone call) | 2618 | 1.2 hours for the time claimed by Applicant |
| 2519 | .1 hours (1 telephone call) | 2625 | 1.75 hours for the time claimed by Applicant |
| 2524 | .5 hours awarded for the time claimed by Applicant | | |
| 2534 | .1 hours (1 telephone call) | 2628 | compensation denied |
| 2539 | .1 hours (1 telephone call to court); .2 hours (conference); computer search and "T/C TO ATTORNEY" not compensable | 2632 | .25 hours for the time claimed by Applicant |
| | | 2637 | .75 hours for the time claimed by Applicant |
| 2548 | .7 hours awarded for the time claimed by Applicant | 2642 | .5 hours estimated time for finalizing notice of proposed order and stipulation; remaining services are clerical in nature |
| 2552 | 2.0 hours estimated time for adding changes to disclosure statement; review not compen- | | |

2652 .25 hours for the time claimed by Applicant

2657 .3 hours (3 telephone calls)

2669 1.0 hours estimated for review of financial statement and claims registers; no compensation for assisting P. Kalban in revising disclosure statement [see DISALLOWANCE # 6 and the discussion therein]

2676 compensation denied for proofreading the disclosure statement as this service is duplicative—we note that within this one lumped time entry, Applicant bills twice for proofreading the disclosure statement—also, on 6/1/92 Applicant billed for proofreading the disclosure statement (Entry Number 2472) and on 6/8/92 (Entry Number 2565), Applicant billed for proofreading disclosure statement and we have awarded compensation for these services within these time entries—also on 6/18, Applicant billed for the same service; compensation denied for reviewing disclosure statement to "CORRECT ALL CITATIONS & DEFINITIONS" as this implies that citations and definitions were originally done incorrectly; as to the remaining services within this time entry, compensation is awarded for 4.5 hours estimated time to perform such services

2693 compensation denied for the reasons stated herein regarding review of documents and services pertaining to research

2699 1.0 hours for the time claimed by Applicant

2706 .3 hours (3 telephone calls); .2 hours (meeting with "A. TARR"); .4 hours (meetings with "P. KALBAN")

2716 .2 hours (conference)

2722 compensation denied

2729 .5 hours (5 telephone calls); .5 hours estimated time to draft notice and .5 hours estimated time to draft ballots; .2 hours (meeting); .2 hours for meeting with "VARIOUS PEOPLE"

2751 compensation denied for research; 3.5 hours estimated time to draft tax consequences for disclosure statement

2770 .2 hours (2 telephone calls); .2 hours (2 telephone calls)

2785 1.25 hours for the time claimed by Applicant

2791 1.50 hours for the time claimed by Applicant

2796 .4 hours (4 telephone calls); .2 hours (meeting)

2806 .2 hours (conference); .4 hours estimated time for preparation for court hearing

2813 3.0 hours for the time claimed by Applicant

2821 6.0 hours for the time claimed by Applicant

2830 .5 hours for the time claimed by Applicant

2835 .4 hours (4 telephone calls); compensation denied for "DRAFT AND REVISE FEE APPLICATION" as this service was billed in Entry Number 2821 and therefore, this is duplicative and moreover, we have awarded complete compensation for this service in Entry Number 2821; the same is true as to "REVIEW ALL MOTIONS AND PAPERS PREPARED FOR PCF & K FOR FEE APP."

2850 1.0 hours for the time claimed by Applicant

2863 .3 hours (3 telephone calls); 1.5 estimated hours for drafting stipulation of settlement regarding Navistar Truck; compensation denied for "DRAFT AND REVISE APPLICATION FOR

FEES; ... FURTHER DRAFTING AND REVISING OF FEE APPLICATION" [see the discussion regarding Entry Number 2835 and our discussion above regarding duplicative services within the lumped time entries]

2877 2.5 hours for the time claimed by Applicant

2881 .1 hours (1 telephone call)

2887 .1 hours (1 telephone call); .2 hours (meeting); compensation denied for "DRAFT AND REVISE FEE APPLICATION" for the reasons stated in Entry Numbers 2835 and 2863

2896 .4 hours (2 meetings); .2 hours (2 telephone calls)

2919 .75 hours for the time claimed by Applicant

2932 .3 hours (3 telephone calls); .6 hours estimated for remaining services

2943 compensation denied [see analysis of this time entry under the heading "DISALLOWANCE # 5" herein]

2954 .4 hours (4 telephone calls); .2 hours (meeting)

2965 .8 hours for the time claimed by Applicant

2977 .2 hours (2 telephone calls)

2983 1.0 hours for the time claimed by Applicant

2987 .2 hours (1 telephone call)

2993 compensation denied as this is an exact duplicate of Entry Number 2983 for which we have awarded full compensation

2997 .2 hours (1 telephone call)

3008 .3 hours (3 telephone calls); .3 hours estimated time for preparation for court

3015 .1 hours (1 telephone call)

3022 2.9 hours for the time claimed by Applicant

3030 .2 hours (2 telephone calls)

3038 1.25 hours for time claimed by Applicant

3046 .3 hours for time claimed by Applicant

3057 .25 hours for time claimed by Applicant

3063 .4 hours (4 telephone calls)

3079 .3 hours for time claimed by Applicant

3085 1.5 hours for time claimed by Applicant

3091 compensation denied as this is an example of two attorney's billing for the same meeting and we awarded compensation for "LS's" attendance at this meeting in Entry Number 3085

3097 3.0 hours for time claimed by Applicant

3104 .5 hours for time claimed by Applicant

3114 1.5 hours for time claimed by Applicant

3122 .4 hours (2 conferences); .1 hours (conference call)

3132 1.0 hours for time claimed by Applicant

3136 .2 hours (2 telephone calls)

3144 .2 hours (conference); no compensation for research the subject matter of which is not disclosed

3161 .3 hours (3 telephone calls)

3235 4.0 hours for time claimed by Applicant

3469 .2 hours for time claimed by Applicant

| Entry Number | Time Claimed by Applicant | Compensable Hours |
|---|---|---|
| 673 | 3.00 | 3.00 |
| 679 | 3.00 | 1.30 |
| 692 | 1.75 | 1.75 |
| 699 | 1.25 | 0 |
| 704 | .75 | 0 |
| 708 | 4.75 | 1.50 |
| 722 | .50 | 0 |
| 726 | 1.50 | 1.50 |
| 730 | 4.25 | 2.80 |
| 741 | 1.50 | 0 |
| 745 | 4.25 | 2.80 |
| 754 | 2.25 | .30 |
| 764 | 1.50 | .30 |
| 772 | .75 | 0 |
| 775 | 2.50 | 2.50 |
| 784* | .75 | .75 |
| 790 | .25 | 0 |
| 793 | .75 | .30 |
| 798* | .50 | .50 |
| 802* | .50 | 0 |
| 806* | 2.00 | 2.00 |
| 817* | 1.00 | 1.00 |
| 820 | 3.25 | 1.60 |
| 832 | 2.00 | 0 |
| 836 | 1.75 | .50 |
| 845 | 2.00 | 0 |
| 849 | 1.00 | .50 |
| 855 | 5.00 | 5.00 |
| 862 | 2.80 | .60 |
| 874 | 3.80 | .60 |
| 884 | .80 | .20 |
| 890 | 2.80 | .70 |
| 899 | 1.00 | 0 |
| 902 | .50 | .10 |
| 908* | 1.00 | 0 |
| 911 | 1.30 | .50 |
| 918 | 2.50 | 0 |
| 924 | 2.00 | 2.00 |
| 927 | 3.30 | 0 |
| 935 | 1.25 | 1.25 |
| 940 | 4.70 | 2.90 |
| 952 | .75 | 0 |
| 957 | .75 | .75 |
| 963 | 2.40 | 1.90 |
| 970 | 1.00 | 1.00 |
| 974 | .75 | .40 |
| 980 | 2.00 | 0 |
| 984 | 2.80 | .40 |
| 993* | .25 | .25 |
| 997 | 1.20 | .50 |
| 1003 | 2.00 | 1.00 |
| 1010 | 3.50 | 0 |
| 1013 | 4.20 | 2.70 |

| | |
|---|---|
| 3241 | .3 hours (3 telephone calls) |
| 3249 | .5 hours (3 telephone calls plus "multiple" calls) |
| 3259 | .2 hours (2 telephone calls) |
| 3266 | .5 hours for time claimed by Applicant |
| 3272 | 6.0 hours for time claimed by Applicant |
| 3285 | 2.2 hours for time claimed by Applicant |
| 3290 | 1.5 hours for time claimed by Applicant |

## XI. SUMMARY OF DISALLOWANCES

The following is a brief summary of the conclusions set forth in parts I through X of this decision. Each time entry in the Final Application is listed below according to its: (1) Entry Number, (2) the time claimed by the Applicant with respect to each particular time entry in hours, and (3) the compensable amount of hours as determined above.

| Entry Number | Time Claimed by Applicant | Compensable Hours |
|---|---|---|
| 567* | 2.00 | 0 [43] |
| 571 | 2.50 | 2.50 |
| 576 | .50 | 0 |
| 579 | 3.5 | .30 |
| 590 | .50 | 0 |
| 596 | 3.75 | 3.75 |
| 609 | 1.50 | 1.50 |
| 612 | .75 | .20 |
| 617* | 2.00 | 0 |
| 621 | 3.75 | 3.40 |
| 631 | 1.25 | .50 |
| 639 | .50 | .50 |
| 643 | .50 | 0 |
| 647 | 1.00 | .10 |
| 654* | .25 | .25 |
| 658 | 1.25 | 0 |
| 664 | 2.50 | 0 |
| 668 | .75 | .20 |

**43.** Certain time entries such as Entry Number 567 have not been specifically analyzed in this decision. However, based on our analysis as to other time entries, we will award or deny or reduce compensation accordingly. Thus, as to Entry Number 567, the review of the third amendment to the financing agreement is not compensable for the reasons set forth throughout the decision as to reviewing documents. In particular, there is no information provided as to the purpose of the review in Entry Number 567 or the necessity thereof. Accordingly, compensation is denied as to this time entry. Where an entry has not heretofore been specifically analyzed, we have placed an "*" to the right of its Entry Number.

| Entry Number | Time Claimed by Applicant | Compensable Hours | Entry Number | Time Claimed by Applicant | Compensable Hours |
|---|---|---|---|---|---|
| 1027 | .50 | 0 | 1359 | 3.00 | 1.50 |
| 1031 | 1.50 | 0 | 1368 | 1.00 | 0 |
| 1036 | 2.00 | 2.00 | 1374 | 2.20 | .80 |
| 1042* | .75 | .75 | 1384 | 9.00 | 9.00 |
| 1046 | 3.50 | 0 | 1393* | .50 | 0 |
| 1049 | 2.75 | 0 | 1397 | 4.25 | 0 |
| 1052 | 4.00 | 1.00 | 1402 | 2.50 | .10 |
| 1066 | 3.90 | 2.50 | 1411 | 2.00 | 0 |
| 1076 | .50 | 0 | 1414 | 1.25 | 0 |
| 1081 | 5.00 | 0 | 1420* | .25 | .25 |
| 1084 | 1.50 | 1.50 | 1427 | .70 | .40 |
| 1089 | 2.50 | .10 | 1434* | 1.00 | 1.00 |
| 1095 | .60 | .20 | 1437 | 2.00 | 0 |
| 1099 | .25 | 0 | 1440 | 1.30 | 0 |
| 1104* | 4.50 | 4.50 | 1446* | 4.00 | 4.00 |
| 1113 | 1.75 | 0 | 1451 | .50 | .30 |
| 1117 | 2.50 | 2.50 | 1457 | .40 | .30 |
| 1120* | .10 | .10 | 1461 | 1.50 | 0 |
| 1125 | 4.75 | 0 | 1466* | 1.50 | 1.50 |
| 1128 | .75 | 0 | 1477 | 1.90 | 0 |
| 1131 | .75 | .30 | 1485 | 2.00 | 0 |
| 1139 | 3.00 | 0 | 1491 | .70 | .50 |
| 1144 | 5.25 | .75 | 1497 | 3.00 | 0 |
| 1160 | 2.30 | .30 | 1502 | 2.00 | 0 |
| 1171 | 1.00 | 0 | 1510 | 5.75 | 5.75 |
| 1174 | .75 | .75 | 1521 44* | .10 | .10 |
| 1182 | .75 | .75 | 1524 | 4.50 | 0 |
| 1187* | .50 | 0 | 1533 | .50 | .30 |
| 1191 | 1.00 | 0 | 1540 | 1.50 | 0 |
| 1196 | 4.40 | 4.20 | 1544 | .70 | .20 |
| 1204* | 2.25 | 2.25 | 1552* | 4.00 | 4.00 |
| 1207* | 1.00 | 1.00 | 1557 | 2.30 | 1.40 |
| 1212 | .90 | .30 | 1570 | 2.00 | 0 |
| 1218* | .50 | .50 | 1574 | 2.90 | 1.40 |
| 1222 | 1.50 | 0 | 1585 | 3.00 | 0 |
| 1225 | .50 | .30 | 1588* | .25 | .25 |
| 1230* | 1.00 | 1.00 | 1597 | 5.10 | 3.60 |
| 1235 | 3.00 | 3.00 | 1606 | 4.80 | 3.20 |
| 1243 | 2.30 | .50 | 1614 | 1.50 | 0 |
| 1255 | 2.50 | 2.50 | 1618 | .40 | 0 |
| 1259 | .60 | 0 | 1622 | 2.00 | 0 |
| 1263 | 2.20 | .80 | 1626 | 3.80 | .70 |
| 1274 | 1.50 | 1.20 | 1637 | 1.00 | .20 |
| 1280* | .25 | .25 | 1645 | 8.50 | 3.50 |
| 1286 | .75 | 0 | 1655 | 4.60 | .40 |
| 1292 | .25 | 0 | 1665 | 8.40 | .20 |
| 1298 | 1.90 | 1.00 | 1678 | 1.00 | 1.00 |
| 1307 | .50 | .30 | 1686 | 2.20 | 1.70 |
| 1312 | 2.00 | 2.00 | 1696 | 7.00 | .40 |
| 1318 | 2.50 | 0 | 1705 | 1.00 | .20 |
| 1322 | .25 | .10 | 1712 | 3.60 | .90 |
| 1329* | .25 | .25 | 1723 | 7.40 | 7.40 |
| 1338 | 3.80 | 3.00 | 1733 | .50 | .50 |
| 1344* | .80 | .80 | 1737 | 9.50 | 9.50 |
| 1348 | .90 | .30 | 1745 | .50 | 0 |
| 1354* | .50 | 0 | 1748 | 3.40 | 1.60 |
| | | | 1760* | .50 | .50 |
| | | | 1764 | .50 | .20 |

44. We have awarded full compensation for this time entry based on the further explanation of such entry provided for in the November 5 Letter.

| Entry Number | Time Claimed by Applicant | Compensable Hours | Entry Number | Time Claimed by Applicant | Compensable Hours |
|---|---|---|---|---|---|
| 1769 | 4.30 | 1.0 | 2134 | .40 | .20 |
| 1784 | .75 | .20 | 2138 | 1.70 | .30 |
| 1789 | .50 | .50 | 2144 | 1.70 | .60 |
| 1800 | 6.50 | 3.40 | 2154 | 4.30 | 2.90 |
| 1811 * | 4.00 | 4.00 | 2161 | 2.00 | 0 |
| 1817 | 1.50 | 0 | 2164 | 1.50 | .50 |
| 1821 | .75 | 0 | 2169 | 1.50 | 1.50 |
| 1825 | 2.70 | .60 | 2178* | .50 | .50 |
| 1833 | 4.30 | .20 | 2182 | 1.90 | .10 |
| 1841 | 1.50 | 0 | 2188 | 1.70 | .20 |
| 1845 | 1.10 | .20 | 2196 | 1.00 | .40 |
| 1850 | 1.25 | 1.25 | 2204 | 2.00 | 0 |
| 1860 | 2.30 | 0 | 2208 | .70 | .40 |
| 1865 | 3.70 | 1.10 | 2214* | .50 | .50 |
| 1871 | 1.50 | 0 | 2217 | 1.00 | .20 |
| 1875 | 2.80 | .10 | 2223 | 1.60 | .80 |
| 1880 | 2.80 | .10 | 2233 | 1.70 | .50 |
| 1884* | .20 | .20 | 2242* | .20 | .20 |
| 1888 | 1.25 | 0 | 2246 | 1.25 | 0 |
| 1893* | 0 | .30 | 2249 | 2.30 | .90 |
| 1899 | .50 | .10 | 2260 | 1.10 | .30 |
| 1906 | 1.50 | 0 | 2267 | .90 | .10 |
| 1910 | 4.60 | .50 | 2271 | 2.90 | .60 |
| 1917* | 1.50 | 1.50 | 2283 | 1.75 | 0 |
| 1922 | 2.30 | .10 | 2286 | 6.20 | 3.40 |
| 1928 | 3.20 | 2.30 | 2297 | .50 | 0 |
| 1935 | 1.90 | 1.60 | 2300* | .25 | .25 |
| 1944 | 1.90 | .40 | 2305* | .40 | 0 |
| 1951* | .50 | .50 | 2311 | .60 | .20 |
| 1954 | .80 | .40 | 2317* | 1.20 | 0 |
| 1960* | .75 | .75 | 2322 | 1.30 | 1.30 |
| 1969 | 1.50 | 0 | 2328 | 9.50 | 4.75 |
| 1972 | .50 | 0 | 2340 | .50 | .10 |
| 1975 | 1.25 | 0 | 2346 | 4.00 | 2.00 |
| 1978 | 1.40 | .30 | 2354 | 2.50 | 0 |
| 1985* | .25 | .25 | 2357 | 1.20 | .40 |
| 1991 | 1.90 | 0 | 2367* | .60 | .60 |
| 1996 | 1.80 | 1.80 | 2374 | .50 | .20 |
| 2001 | 1.40 | .30 | 2379 | .50 | .20 |
| 2008 | .30 | 0 | 2386 | 4.70 | .60 |
| 2011 | 1.75 | 0 | 2398 | 4.00 | .20 |
| 2014 | .50 | 0 | 2407 | 4.70 | 2.60 |
| 2018 | 2.20 | .30 | 2420 | 1.20 | 1.20 |
| 2027 | 1.10 | .50 | 2425 | 1.80 | 0 |
| 2033 | .30 | 0 | 2429* | .75 | .75 |
| 2037 | 2.70 | .70 | 2432 | 2.10 | .60 |
| 2049 | .50 | 0 | 2441 | .60 | 0 |
| 2054 | 2.30 | .30 | 2444 | 2.20 | 2.00 |
| 2062 | 2.40 | .30 | 2450 | .80 | .30 |
| 2070* | .50 | .50 | 2455 | 3.50 | 3.50 |
| 2075 | 1.50 | .50 | 2460* | .10 | .10 |
| 2082 | .25 | 0 | 2464 | 1.50 | 0 |
| 2087 | 1.80 | .30 | 2468 | 1.25 | 0 |
| 2095 | 1.50 | 1.50 | 2472 | 1.00 | .80 |
| 2102 | 2.00 | 0 | 2477 | .40 | .40 |
| 2106* | .50 | 0 | 2483 | .30 | .30 |
| 2110 | 5.70 | 3.30 | 2489 | .30 | .30 |
| 2122 | 2.30 | 1.20 | 2493 | 1.20 | .50 |
| 2130 | .50 | .30 | 2499 | 1.30 | .20 |
| | | | 2505 | .50 | .50 |
| | | | 2508 | .30 | .10 |

| Entry Number | Time Claimed by Applicant | Compensable Hours | Entry Number | Time Claimed by Applicant | Compensable Hours |
|---|---|---|---|---|---|
| 2513* | .50 | .50 | 2877 | 2.50 | 2.50 |
| 2519 | 3.40 | .10 | 2881 | .60 | .10 |
| 2524 | .50 | .50 | 2887 | 2.50 | .30 |
| 2530* | .25 | 0 | 2896 | 2.10 | .60 |
| 2534 | .40 | .10 | 2908 | 3.00 | 0 |
| 2539 | 1.2 | .30 | 2913 | 5.00 | 0 |
| 2548 | .70 | .70 | 2919 | .75 | .75 |
| 2552 | 2.5 | 2.00 | 2826 | .40 | 0 |
| 2558 | .60 | .10 | 2932 | 2.40 | .90 |
| 2565 | 1.9 | 1.00 | 2943 | 2.40 | 0 |
| 2570 | 1.5 | 1.25 | 2954 | 2.10 | .60 |
| 2575 | 3.5 | 0 | 2965 | .80 | .80 |
| 2580 | 2.75 | .40 | 2973 | 1.50 | 0 |
| 2586 | 5.5 | 0 | 2977 | .30 | .20 |
| 2592 | 2.5 | 2.50 | 2983 | 1.00 | 1.00 |
| 2595 | 2.5 | 0 | 2987 | .90 | .20 |
| 2601 | 1.25 | 0 | 2993 | 1.00 | 0 |
| 2605 | 2.5 | 2.50 | 2997 | .50 | .20 |
| 2608 | 1.00 | 0 | 3004 | .25 | 0 |
| 2613 | 2.4 | 0 | 3008 | .70 | .60 |
| 2618 | 1.2 | 1.20 | 3015 | .30 | .10 |
| 2625 | 1.75 | 1.75 | 3022 | 2.90 | 2.90 |
| 2628 | 1.00 | 0 | 3030 | .40 | .20 |
| 2632 | .25 | .25 | 3038 | 1.25 | 1.25 |
| 2637 | .75 | .75 | 3046 | .30 | .30 |
| 2642 | 1.2 | .50 | 3053 | .50 | 0 |
| 2648 | 2.00 | 0 | 3057 | .25 | .25 |
| 2652 | .25 | .25 | 3063 | .90 | .40 |
| 2657 | 3.00 | .30 | 3071 | .10 | 0 |
| 2669 | 2.00 | 1.00 | 3075 | 2.00 | 0 |
| 2676 | 9.00 | 4.50 | 3079 | .30 | .30 |
| 2693 | 2.00 | 0 | 3085 | 1.50 | 1.50 |
| 2699 | 1.00 | 1.00 | 3091 | .25 | 0 |
| 2702 | 2.00 | 0 | 3097 | 3.00 | 3 |
| 2706 | 5.00 | .90 | 3104 | .50 | .50 |
| 2716 | .50 | .20 | 3110 | 2.30 | 0 |
| 2722 | 3.00 | 0 | 3114 | 1.50 | 1.50 |
| 2725 | 2.00 | 0 | 3122 | 1.00 | .50 |
| 2729 | 9.00 | 1.70 | 3132 | 1.00 | 1.00 |
| 2747 | .25 | .25 | 3136 | .80 | .20 |
| 2751 | 4.5 | 3.50 | 3144 | .75 | .20 |
| 2756 | 1.00 | 0 | 3151 | 1.50 | 0 |
| 2761 | 1.00 | 0 | 3157 | 3.30 | 0 |
| 2764 | 1.50 | 0 | 3161 | 1.00 | .30 |
| 2767 | 2.00 | 0 | 3169 | 1.50 | 0 |
| 2770 | 5.00 | .40 | 3175* | .80 | .20 |
| 2782 | 2.00 | 0 | 3185* | 2.00 | 2.00 |
| 2785 | 1.25 | 1.25 | 3192* | .20 | .20 |
| 2791 | 1.50 | 1.50 | 3198 | 1.00 | 0 |
| 2796 | 2.75 | .60 | 3202 | 1.50 | 0 |
| 2806 | 1.75 | .60 | 3206* | .30 | .30 |
| 2813 | 3.00 | 3.00 | 3215* | .25 | .25 |
| 2817 | 1.00 | 0 | 3222* | .50 | .50 |
| 2821 | 6.00 | 6.00 | 3228* | .30 | .30 |
| 2830 | .50 | .50 | 3235 | 4.00 | 4.00 |
| 2835 | 6.25 | .40 | 3469 | .20 | .20 |
| 2850 | 1.00 | 1.00 | 3241 | .60 | .30 |
| 2859 | 2.00 | 0 | 3249 | 2.00 | .50 |
| 2863 | 5.50 | 1.80 | 3259 | 2.00 | .20 |
| | | | 3266 | .50 | .50 |
| | | | 3272 | 6.00 | 6.00 |

| | | |
|---|---|---|
| 3285 | 2.20 | 2.20 |
| 3290 | 1.50 | 1.50 |

## PART II

### FEES INADVERTENTLY OMITTED FROM THE INTERIM APPLICATION

As part of the Final Application, fees are requested for time entries within the period 2/15/91 to 11/27/91 claimed to have been "in-advertently" omitted from the Interim Application. A review of these time entries (attached as "Exhibit C" to the Final Application) reveals that many of these entries suffer from the same shortcomings as the time entries analyzed above.

The following are examples of non-lumped time entries which were omitted from the Interim Application and which are not compensable for the reasons outlined in Part I of this decision:

| 3/4/91 | RESEARCH RE NASDA RULES AS PER J. ALTERBAUM | NB | .75 | 105.00 |
|---|---|---|---|---|
| 7/12/91 | REVIEW AND REVISION OF NOTICE, ORDER | SC | 2.00 | 190.00 |
| 7/31/91 | CONFERENCE WITH DESSBERG | PHK | .25 | 58.75 |
| 9/30/91 | RESEARCH | JS | 2.00 | 190.00 |
| 10/21/91 | RESEARCH LAW JOURNAL CASES | EB | 4.5 | 292.50 |

Similarly, compensation for the following non-lumped time entries (denoted by their Entry Numbers) is unavailable for the reasons set forth in Part I of this decision: 63 [45], 67, 158, 188, 191, 199, 213, 217, 221, 225, 229, 233, 245, 267, 274, 296, 299, 310, 317, 334, 406, 413, 417, 421, 429, 433, 499, 518 and 527.

As to the remaining time entries, these consist of lumped time entries for which a reduction in compensation is warranted and time entries for which we will award compensation for the full amount of time for which the Applicant requests fees.

Within the latter group are the following time entries for which we are able to authorize compensation: 78, 85, 94, 109, 114, 119, 128, 148, 163, 167, 171, 175, 195, 203, 249, 255, 258, 263, 270, 284, 288, 292, 302, 313, 320, 367, 394, 437, 442, 447, 453, 463, 481, 503 and 523.

As to those which consist of lumped time entries, the amount of compensable hours will be reduced in accordance with the standards set forth in Part I of this decision. Thus, telephone calls will be compensable for .1 hours and meetings will be compensable for .2 hours. Based on these standards, the following list sets forth compensation for the lumped time entries that we are able to authorize:

| ENTRY NUMBER | COMPENSATION IN TERMS OF COMPENSABLE HOURS |
|---|---|
| 52 | .2 hours (2 telephone calls) |
| 101 | .4 hours (2 conferences) |
| 133 | .4 hours (4 telephone calls); conference with Shafferman and review of documents not compensable as subject matter of conference not disclosed nor are the documents sufficiently identified for this Court to understand which documents were reviewed |
| 140 | compensation denied as the subject matter of the calls to Orliss and Klaips and Cagney and the meetings are not disclosed; in addition, this Court cannot determine what was researched or what motion was prepared or which affidavit of service was reviewed |
| 180 | .2 hours (conference); .2 hours (2 telephone calls) |

---

**45.** The further explanation provided for in the November 5 Letter for this time entry and entry number 67 does not remedy the problems of inadequate descriptions of such time entries.

| | |
|---|---|
| 237 | .1 hours (for "brief TELECONFERENCE"); .2 hours (conference); "review of numbers" not compensable as this Court is not provided with the necessary information to determine whether this service is compensable |
| 278 | .2 hours (conference) |
| 327 | .2 hours (2 telephone calls); research not compensable as this Court is not provided with the necessary information to determine if such research is compensable |
| 337 | .1 hours (conference call); .2 hours (conference) |
| 343 | .1 hours (one telephone call); meeting not compensable as this Court is not informed as to the subject matter of the meeting |
| 347 | .3 hours (3 calls); .2 hours (conference) |
| 355 | .6 hours (6 telephone calls); .2 hours (meeting) |
| 373 | .3 hours (3 telephone calls) |
| 381 | .1 hours (1 telephone call); .2 hours (conference) |
| 386 | .5 hours (5 telephone calls) |
| 401 | .3 hours estimated time to draft letters |
| 457 | .2 hours (2 telephone calls) |
| 468 | .2 hours (2 telephone calls) |
| 475 | .1 hours (1 telephone call) |
| 485 | .4 hours (4 telephone calls); research not compensable as this Court is not provided with the necessary information to determine if such research is compensable |
| 491 | .2 hours estimated time to review correspondence and .3 |
| 507 | compensation denied; subject matter of calls not disclosed; no information provided as to who the conversation regarding Resolution Trust motion was with, etc. |

## PART III

### FEES REQUESTED IN THE INTERIM APPLICATION

As part of the Final Application, we are called upon to make a final determination with respect to the fees and expenses set forth in the Interim Application.

■ The Interim Application requested an award of legal fees of $43,750.00 and reimbursement of expenses of $6,838.46 for services rendered by the Applicant pre-petition. However, since this Court has been provided with no documentation of these pre-petition fees and expenses, we are unable to authorize such compensation.

As to the Interim Period Time Entries, our analysis has revealed that many of these time entries suffer from the same failure of proof on the part of the Applicant as the time entries discussed in Parts I and II of this decision. However, given our holding in Parts I and II of this decision, we will exercise our equitable discretion and refrain from further analysis of the Interim Application. Any party in interest that desires to continue the analysis begun herein they may do so within twenty days of the order to be entered hereon by serving upon the U.S. Trustee, the Debtor, and the Trustee with the detailed results of such analysis together with proposed findings. The attorneys for the Debtor may then have twenty days to respond, after which the matter will the be considered submitted.

## PART IV

### REASONABLE HOURLY BILLING RATE

■ Having determined the number of compensable hours, we must now determine the reasonable hourly billing rate. Under 11

U.S.C. § 330, our criteria is the "cost of comparable service". *In re Drexel Burnham Lambert Group,* 133 B.R. at 22. Cost of comparable service means "that fee which is customarily charged in the local community by someone who possesses similar skill, experience, expertise stature and reputation who is faced with similarly novel and complex issues and who procures comparable results." *In re Shades of Beauty, Inc.,* 56 B.R. at 951.

■ In neither the Final Application nor the Interim Application, has the Applicant provided the Court with any evidence to permit a finding that the rates for which it seeks compensation are appropriate. Both applications only state that the rates of this particular firm have been found reasonable by other courts in this circuit. There is no explanation why or upon what basis other courts reached that result nor are we informed as to whether those courts even addressed the issue or made specific findings with regard to an appropriate billing rate, nor are we informed of the names of any such cases which may have been reported to enable us to obtain such information on our own. The applications do not even state that the hourly rates now sought are the same as those billed in prior cases. We do not know the time span covered by such other cases, nor is there any discussion of change of personnel, or of professional accomplishments and recognition which might warrant an enhancement of their billing rate, although the application indicates that as of October 1, 1992, Applicant's billing rates did change. Absent any facts other than its success in other applications, the Applicant has not met its burden of establishing the value of its services. *In re Shades of Beauty, Inc.,* 56 B.R. at 951.

Thus, the burden of establishing the appropriate billing rate for each professional and paraprofessional for whose services compensation is sought has been totally neglected by the Applicant.

■ The Court may however, make an independent finding of a reasonable hourly rate if appropriate, given the circumstances of the case. *In re Tak Communications, Inc.,* 154 B.R. 514, 517–18 (Bankr.W.D.Wis. 1993); *In re Financial News Network Inc.,* 134 B.R. 732, 735 (Bankr.S.D.N.Y.1991).

■ However, for the same reasons set forth in Part III hereof, we will refrain from addressing Applicant's failure of establishing appropriate billing rates. Thus, notwithstanding that there has been a total failure of proof by the Applicant as to the reasonableness of its billing rates, we will award, without deciding the reasonableness of the hourly billing rates at this point, compensation based on the hourly rates set forth in the applications.[46]

## PART V

### REIMBURSEMENTS OF EXPENSES

■ As part of the Final Application, Applicant seeks reimbursement of expenses for expenses incurred during the Final Application Period. We are unable to determine from the Final Application the amount of actual expenses claimed by the Applicant to have been incurred during this period. On "Exhibit G" to the Final Application, the "actual amount" of expenses claimed is $15,412.26. However, if we add the "actual" amounts allegedly incurred as set forth in paragraphs 78 through 88 the total equals $16,016.41. Finally, on "Exhibit B" to the Final Application, is a computer printout of the expenses allegedly actually incurred during the Final Application Period, the "Total Disbursements" amount is $17,284.32. However, Applicant has voluntarily reduced the amount for which it seeks reimbursement to $10,529.79 for expenses incurred during the Final Application Period.

As part of the Final Application, Applicant also seeks reimbursement of expenses in the amount of $885.83 for expenses which were inadvertently omitted from the Interim Application.

---

**46.** We caution against reliance by the bar upon this procedure and note that we do not want this abstention or omission on our part in this Part or in Part III of this decision to be taken as approval of applications which fail to meet their burden with respect to its billing rates or otherwise. In the future, such failure will not be tolerated.

Finally, Applicant seeks reimbursement of expenses in the amount $6,838.46 for prepetition expenses and $16,497.52 [47] for expenses incurred during the interim application period.

■■■■■ These amounts reflect claimed expenditures for photocopying, facsimile, postage, telephone, courier service, travel expenses, meals and word processing. In applying for allowances of reimbursement, the same showing of necessity and reasonableness must be made by the applicant. *In re Island Helicopter Corp.*, 53 B.R. 71 (Bankr. E.D.N.Y.1985); *In re Environmental Waste Control*, 122 B.R. 341; *In re STN Enterprises, Inc.*, 70 B.R. 823 (Bankr.D.Vt.1987); *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr. S.D.N.Y.1986). The Court must also disallow any disbursements that are normally overhead expenses, and thus a component of the hourly rate for legal services. *In re Island Helicopter Corp.*, 53 B.R. at 73.

Here, Applicant has failed to show even in even a general fashion that claimed disbursements were both necessary and reasonable. Both the Final Application and Interim Application merely provide a listing of alleged expenses claimed together with the date and the amount billed for each item but without explanation of which service they relate to, or why they were necessary. For example, typical expense entries are as follows:

```
PHOTOCOPYING 02/13/91 2.00
MEALS–NICKS 02/15/91 10.60
LOCAL TRAVEL—EXCEL–
230–PARK 02/15/91 18.00
```

Absent any showing sufficient for us to make the findings required by 11 U.S.C.

§ 330(a)(2) that the claimed disbursements were both actual and necessary we are unable to authorize reimbursement for any of the disbursements sought other than court filing fees for the original petition and any adversary proceedings which appear in the clerk's docket. These amount to $500.00.

## CONCLUSION

Based on all of the above, compensation is allowed in a total amount of $239,164.23 which amount represents:

I. $67,949.75 in fees for the services set forth in the Final Application.[48]

II. $13,475.55 in fees for the time entries Inadvertently Omitted From The Interim Application,[49]

III. $157,738.93 in fees for the services set forth in the Interim Application, which amount reflects the total amount of fees requested in the Interim Application which pertain to post-petition services.

IV. Applicant also may be reimbursed for court filing fees in the amount of $500.00

V. Since Applicant has already received $324,337.38 in advances and still retains the remainder of the pre-petition retainer in the amount of $49,411.54, Applicant is hereby directed to return to the Chapter 7 trustee $134,084.69.

VI. All of the numbers set forth are subject to correction for mathematical accuracy. Interested parties are invited to call to the Court's attention any errors in computation within twenty days hereof.

| | | | |
|---|---|---|---|
| JA | 33.5 | 280.00 | 9,380.00 |
| CG | 6.6 | 315.00 | 2,079.00 |
| RB | .1 | 120.00 | 12.00 |
| IF | 13.5 | 70.00 | 945.00 |
| LR | 12.75 | 75.00 | 956.25 |

---

**47.** Applicant has voluntarily reduced the amount it seeks from the alleged "actual" expenses incurred in the amount of $23,676.98 for the interim application period.

**48.** Based on our holding in Part I of this decision, this award of compensation is broken down as follows:

| Atty | Hours | Rate | Amount |
|---|---|---|---|
| PHK | 120.7 | 235.00 | 28,211.75 |
| AHS | 86.0 | 95.00 | 8,170.00 |
| JOL | 25.3 | 365.00 | 9,380.00 |
| JC | 21.65 | 195.00 | 4,221.75 |
| NB | .50 | 140.00 | 70.00 |
| AA | 2.20 | 235.00 | 517.00 |
| MA | 4.00 | 325.00 | 1,300.00 |
| LS | 2.00 | 295.00 | 590.00 |
| DRL | 3.00 | 285.00 | 855.00 |
| AJT | 4.50 | 270.00 | 1,215.00 |
| WMP | .20 | 235.00 | 47.00 |

**49.** Based on our holding in Part II of this decision, this award of compensation is broken down as follows:

| Atty | Hours | Rate | Amount |
|---|---|---|---|
| PHK | 9.00 | 235.00 | 2,115.00 |
| JOL | 25.5 | 325.00 | 8,287.50 |
| CSA | .50 | 205.00 | 102.50 |
| AHS | 5.50 | 95.00 | 522.50 |
| CD | 6.40 | 175.00 | 1,120.00 |
| JC | .25 | 195.00 | 48.75 |
| HB | .15 | 235.00 | 35.25 |
| PJN | 9.00 | 95.00 | 855.00 |
| AJT | .20 | 260.00 | 52.00 |
| DRL | .20 | 285.00 | 57.00 |
| CG | 1.50 | 280.00 | 280.00 |

■ In closing, a brief comment is appropriate. Nowhere in the legal community is the golden rule more scrupulously adhered to than in bankruptcy fee applications. Former opponents now stand shoulder to shoulder in a display of collegiality noted by its absence of disparaging comment on the application of one formerly an adversary who now becomes an ally in an arena where only the court and perhaps the U.S. Trustee remain as protagonists. Affability among adversaries may be admirable; when overdone it becomes neglect or even dereliction. The duty imposed upon this court to review in detail applications for compensation even where no objection has been articulated (*see, e.g. In Matter of Ferkauf, Inc.,* 42 B.R. at 853) is intended to supplement the duties imposed upon the trustee and U.S. Trustee; the obligation imposed upon the court in no way replaces or abrogates such responsibilities.

To one unfamiliar with the bankruptcy process, this opinion would appear to be an exercise in masochism. Nothing could be further from the truth. This task is given to us by the Congress. Ours is not to complain, but to comply. However, to the extent that there is anything remotely approaching unanimity among bankruptcy judges it is the feeling that review of fee applications is one of their most unpleasant responsibilities. *See, In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 15 (Bankr.S.D.N.Y.1991) ("The review of professional fees ... is distasteful to the Court and demeaning to the professional. Unfortunately, however, it is mandated by the Bankruptcy Code."). The fixing of allowances has been called "the most thankless and delicate task in all of the problems of judicial reorganization." Frank, *Epithetical Jurisprudence and the Work of the Securities and Exchange Commission in the Administration of Chapter X of the Bankruptcy Act,* 18 N.Y.U.L.Q.Rev. 317, 349–50 (1941). To review a lengthy, deficient application is burdensome; to review a lengthy, deficient application without meaningful assistance from either the trustee or the U.S. Trustee is intolerable. The level of review by each of these entities in this case can be characterized as perfunctory at best.

■ The bar is hereby placed on notice that hereafter, one of the factors that this Court will consider in passing upon applications by debtors and trustees for retention of counsel will be the thoroughness with which proposed counsel have reviewed and appropriately commented upon fee applications of other professionals in cases where they have had a duty to do so. Furthermore, in determining the appropriate billing rate for professionals whose fees are under consideration, these items will be considered along with other appropriate criteria.

■ We are aware that 28 U.S.C. § 586(a)(3)(H) requires the U.S. Trustee to monitor applications filed under 11 U.S.C. § 327 and to file comments with the court only when the U.S. Trustee deems it to be appropriate. However, we read that statute differently than the way that the U.S. Trustee appears to. As we understand that statute, the U.S. Trustee makes the preliminary decision as to whether or not participation is appropriate. However, once having determined that participation is appropriate, we see nothing in the statute that authorizes less than full, active, and vigorous participation. Having elected to comment, even perfunctorily, upon the application under review herein, the U.S. Trustee has assumed the duty of full participation such that this court should have had to do little more than approve or disapprove objections filed by that office. As 28 U.S.C. § 586 suggests nothing less, we will expect nothing less in the future.

The Applicant is directed to settle an order in accordance with this decision on the U.S. Trustee and the Chapter 7 Trustee within thirty (30) days from the date hereof.